CARMELINDA STURCHIO and EUGENIO STURCHIO, her husband, complainants,

*v.*

SALVATORE D'AURIA et al., defendants.

[Decided September 24th, 1931.]

*Mr. Egidio W. Mascia* and *Mr. Carl Olsan* (*Mr. Ralph E. Lum,* of counsel), for the complainants.

*Mr. Nicholas La Vecchia,* for the defendants.

BERRY, V. C.

The bill is by a wife and her husband against the father of the wife and the Prima Banca Italiana, a private bank owned and controlled by him, and seeks an accounting of a dowry fund created by the father on the occasion of his daughter's marriage on November 21st, 1906, the removal of the father as trustee of said fund and the appointment of a new trustee. The material facts in the controversy are not in substantial dispute. The establishment of the dowry fund and that the complainants are entitled to an accounting is admitted, but it is claimed such accounting was never demanded or refused, and attached to the bill of particulars filed herein is a statement of the account and the real controversy concerns its sufficiency.

The defendant Salvatore D'Auria is an Italian banker, maintaining banking houses in Newark, New Jersey, and Naples, Italy, and is a man of substance and prominence in the community in which he resides. On the occasion of the marriage of his daughter, Carmelinda, on November 21st, 1906, by a contract in writing in the Italian language, he sets up a dowry in the sum of $13,000 which, in effect, was a trust fund, the income upon which was to be paid to his daughter semi-annually during her life, the *corpus* to be disposed of upon her death and in the event of her dying childless, one-half of the principal was to revert to the donor. The pertinent portion of said agreement, as translated, is as follows:

"And as it has not yet been decided how to invest said amount permanently, and as the future couple have not yet decided whether they will continue to reside in the United States of America or return to Italy, there has been agreed between the appearers herein: Mr. Salvatore d'Auria and Miss Carmelinda d'Auria, assisted by her mother, Colomba Gonnella, that said amount of 13,000 dollars will be deposited temporarily, under the dowry lien, in the name of said Miss d'Auria, in the Prima Banca Italiana in said city of Newark, of which bank the dowry giver, Mr. Salvatore d'Auria, is the owner duly recognized by the laws of the State of New Jersey, and Miss Carmelinda d'Auria will receive on said deposit interest at the rate of 6 per cent. per annum, payable every six months.

"Said money, thus deposited, may be withdrawn from said bank to be invested elsewhere under the dowry lien, only when said Miss Carmelinda d'Auria may deem it convenient to request so, or when said bank deems it convenient to pay out said deposit.

"It has been agreed also between said Salvatore d'Auria, on one hand, and his daughter Carmelinda, on the other, that when said money will be finally invested, the appearer, Mr. d'Auria will have the right to take care directly of depositing said amount in the Ledger of the Public Debt of the Kingdom of Italy, in the name of Carmelinda d'Auria, subject to the regular dowry lien, in accordance with the provisions of the Italian law; or said dowry beneficiary will buy real property in Italy for said amount under the dowry lien also in accordance with said laws. In this second case, however, the said appearer, Salvatore d'Auria, reserves for himself the right to approve in writing the purchase made by his said daughter Carmelinda in order to give full validity to her future acts.

"And finally it has been agreed that in case one of the couple dies before the other without there being any children, the estate of the deceased one shall be settled in accordance with the laws that are in force in the state in which the inheritance proceedings will be started. In case, however, that said Carmelinda d'Auria should die first with-

out leaving any children, then one-half of the amount of the dowry established as above must be given back to the dowry giver, Mr. Salvatore d'Auria or to his heirs, and with respect to the other half, Miss Carmelinda may dispose of same by last will and testament or leave the disposition of same to the provisions of the law."

Immediately after the marriage of the complainants and pursuant to the terms of the dowry agreement, the sum of $13,000 was deposited in the D'Auria bank in Newark in the name of the daughter, where it remained until July 11th, 1911, on which date, with the accumulations of interest thereon, it was deposited in the Merchants National Bank of Newark, in the name of "Salvatore D'Auria, Personal." The initial deposit in this bank was the sum of $17,050, which comprised the original $13,000 plus interest at the rate of six per cent. per annum from the date of the creation of the dowry to the date of such deposit. It is claimed by Mr. D'Auria, however, that he was not liable for interest on the fund for the period between December 23d, 1909, and July 12th, 1911, because, as he claims, in December, 1909, he told the complainants that the deposit of this fund in his bank was to have been temporary only and that he could not continue to pay interest thereon if it longer remained there, and that it was then agreed between the parties that he should not thereafter be liable for interest pending its final investment. This is denied, however, by the complainants. Notwithstanding this alleged agreement the full amount of the principal with accumulations at the rate of six per cent. per annum was deposited in the Merchants National Bank, although the defendants claim that of such deposit only $15,461 properly belonged in said dowry account. The additional sum to make up the initial deposit was deposited apparently against the contingency of Mr. D'Auria's being held liable at the rate of six per cent. interest for the full period that the fund remained in his bank. Thereafter, the fund, until its final investment as hereafter mentioned, remained on deposit in the Merchants National Bank at three and one-half per cent. interest, payable semi-annually, and Mr. D'Auria, at the end of each succeeding six months' period, made additional deposits in the account of two and one-half per cent.

on the semi-annual balances in order to bring the income on the fund up to six per cent. In 1914, Mr. D'Auria went to Italy and remained there until February of the following year. When he left he gave the complainants complete power of attorney and under that power the complainants, on August 1st, 1914, shortly after Mr. D'Auria's departure, withdrew the sum of $20,000 from this account in the Merchants National Bank, took it to the D'Auria bank and there kept it in a separate safe, not mixed with the assets of the bank, until Mr. D'Auria returned from Italy. Then, upon his discovery of what had happened, and pursuant to his direction, the money was returned and redeposited in the Merchants bank on February 25th, 1915. In the donor's account no interest is allowed on the fund during the period when it was withdrawn from the Merchants bank. According to that account the fund, on June 15th, 1916, amounted to $18,602.80, although actually at that time there was $19,967.88 in the account, the surplus representing disputed interest, additional deposits having been made to the account by the donor to cover the disputed interest up until that time. On May 6th, 1916, Mr. D'Auria purchased for this account Italian Government External Dollar Bonds bearing six per cent. interest, to the amount of $20,269.74, at par, adding to the fund $301.86 of his own money in order to make up the necessary purchase price. The fund remained thus invested until May 31st, 1917. In the meantime, the following correspondence passed between the parties:

> "Newark, New Jersey.
> February 13, 1917.
>
> Dearest Father,
>
> As we want to take advantage of the present advantageous condition of the exchange, we would like to invest in the new Italian loan, the money you have had in your hands since the marriage; capital and interest included.
>
> In investing said money you will follow the procedure that seems most proper to you to guarantee the non-transferability of the investment in accordance with the provisions of the marriage articles.
>
> Trusting that you will comply with our wishes mentioned above, we beg to remain,
>
> > Your sons,
> > ERMALINDA D'AURIA,
> > EUGENIO STURCHIO."

February 13, 1917.

Dr. Eugenio, Ermelinda Sturchio,
My dear children:

Replying to your letter, I beg to inform you that I am willing, as I always was, to comply with my promises. Regarding the terms upon which I am willing to effect the investment of the money in question, same will be explained to you orally by Mr. Severio Sica.

Affectionately,
Your father,

SALVATORE D'AURIA."

"Newark, New Jersey,
April 18, 1917.

Dearest Father:

In agreement with my husband, and for our exclusive risk, I authorize you to invest in the last 5% Italian National Loan, all the money, capital and interest deposited with your bank, which money is due me as dowry, given by you at the time of my marriage.

I respectfully and affectionately kiss your hand, and remain

Your affectionate daughter,
ERMALINDA D'AURIA STURCHIO."

In pursuance of this correspondence Mr. D'Auria thereupon purchased Italian Government five per cent. Internal Lira Bonds to the amount of $19,214.20, the amount to which, according to Mr. D'Auria, this fund was entitled at that time, and which, converted into Italian money, represented 132,577 lira. The market price of these bonds at that time was 89 and with this fund bonds of the par value of 149,000 lira were purchased. They were placed in a large envelope marked "Consolidato Italiana, Ermalinda D'Auria Sturchio." At the same time bonds of the same kind were purchased to an amount representing the difference between the interest paid and credited on the dowry fund and interest at six per cent. computed from December 23d, 1909, and they were placed in a similar envelope marked "Consolidato Italiana, Ermalinda D'Auria Sturchio, c/o Salvatore D'Auria." Both packages of bonds were thereafter kept in the Merchants National Bank in a safe deposit box and coupons were clipped therefrom periodically and the proceeds reinvested in the same kind of bonds until the last interest period preceding the final hearing in this cause. The

bonds now representing this fund amount to 323,400 lira and were produced in open court at the final hearing and tendered to the complainants.

Although there is some dispute between the parties on this point, it seems clear that the actual payment of interest on this fund periodically to the complainants was waived by them and that it was by their consent that the fund was allowed to accumulate until its final investment in the Italian bonds, and that the accumulations of the fund by reinvestment of the interest accruing periodically has also been by their acquiescence and consent since such investment. But irrespective of what had passed previously, it would seem that the letters of February 13th and April 18th, 1917, constituted a waiver of the actual payment of such interest and the approval of the accumulation of the fund and its investment in the Italian bonds. With respect to the rate of interest to which the complainants are entitled, I think it must be conceded that they are entitled to six per cent. interest during the whole period preceding the final investment of the fund in Italian bonds, excepting, however, that portion of the period during which the fund was withdrawn from the Merchants National Bank by the complainants, that is, from August 1st, 1914, to February 25th, 1915. For this period no interest will be allowed. The agreement respecting such interest, alleged to have been made in December, 1909, is denied by the complainants, and it is clear that there was no express assent to Mr. D'Auria's proposition and no implied consent can be inferred from the circumstances. That the alleged agreement was not, to Mr. D'Auria's knowledge, complete, is indicated by his periodically adding to the fund upon its transfer to the Merchants National Bank and thereafter, sufficient to bring the income up to six per cent. Assuming the fund, therefore, to have been represented by the accumulated bonds deposited in both envelopes above referred to, the only remaining question is as to whether or not those funds and the accumulations were properly invested in such bonds. Reference to the above quoted portion of the agreement indicates clearly, I think, that the deposit of the fund in

the D'Auria bank was intended to be temporary only, and that ultimate investment of the fund was to be in Italian bonds or real property in Italy, depending upon whether or not the married couple remained in this country or returned to Italy to live. If the former, the agreement provided "Mr. D'Auria will have the right to take care directly of depositing said amount in the Ledger of the Public Debt of the Kingdom of Italy in the name of Carmelinda D'Auria, subject to the regular dowry lien in accordance with the provisions of the Italian law." It is around this clause of the agreement that the main dispute centers. Complainants claim that the investment of the fund in the Italian bonds was not in accordance with this provision of the agreement, but in view of the specific authority for such investment as contained in the letters of February 13th and April 18th, 1917, it does not lie in their mouths to deny the propriety of such investment. It is claimed, however, that as these bonds are bearer bonds, they are not "subject to the regular dowry lien in accordance with the provisions of the Italian law" but according to the opinion of Dr. Ragano, an Italian lawyer whose expert opinion as to the requirements of the Italian law I accept, all that is necessary to effect complete compliance with this provision of the agreement and the Italian law is that the bonds now in hand be presented to the proper authorities in Italy for registration in the name of the dowress and exchanged for registered bonds, and the filing of the agreement constituting dower. It is a mere question of mechanics. This the defendant D'Auria is willing to do. His failure to do so up to this time constitutes, in my opinion, his sole violation of the terms of his agreement, and under the circumstances this is entirely excusable. There is no doubt but that the complainants are entitled at this time to receive the accumulated income on the original fund and it is not now necessary that the donor should have the bonds representing such income exchanged for registered bonds in the name of the dowress, but it may be done by agreement of the parties.

In my opinion, this whole controversy arises because of the fall in the value of the Italian lira, the complainants hav-

ing decided that they prefer American dollars to the currency of their native country. They desire to pass the loss, if any, to the generous donor of the fund, but this they will not be permitted to do. In passing, it should be noted that in none of the transactions concerning the fund and its investment has Mr. D'Auria or the D'Auria bank reaped one cent of profit; on the contrary, some of the transactions have been at a loss to the defendants. The bill will be dismissed.