HENRY J. GAEDE, executor and trustee under the will of J. Mortimer Coward, complainant-appellant,

*v.*

AUDREY L. CARROLL and JOHN MORTIMER COWARD, defendants-appellants, and MIRIAM COWARD RICE, defendant.

[Submitted May 26th 1933. Decided November 23d, 1933.]

*Mr. Dougal Herr,* for the complainant-appellant.

*Messrs. Lindabury, Depue & Faulks* and *James E. M. Tams,* for the defendant-appellant Audrey L. Carroll.

*Mr. Francis Lafferty,* for the defendant-appellant John Mortimer Coward.

The opinion of the court was delivered by

DONGES, J.

J. Mortimer Coward died March 4th, 1928, having made his last will and testament dated September 3d, 1925, which

was admitted to probate by the surrogate of Essex county on March 22d, 1928, and letters testamentary issued to complainant, Henry J. Gaede. Complainant qualified as executor and has since been acting as such executor.

Testator left him surviving his widow, Audrey L. Coward, and a son, John Mortimer Coward, about three years of age at the time of testator's death. Testator also left him surviving a sister, Miriam Coward Rice, who, by the terms of the will, has a contingent interest in his estate. On March 14th, 1930, Mrs. Coward was married to one Lee W. Carroll.

Testator, at the time of his death, was engaged in the retail shoe business, conducting two stores in the city of New York and one store in the city of Boston. Complainant executor, pursuant to authority conferred upon him by the will, continued the operation of the shoe business until April, 1930, when he contracted to sell the same, which sale was consummated on May 7th, 1930.

Serious questions having arisen with respect to the settlement of the estate, the executor filed his bill for instructions and a construction of the will.

Appeals taken by the executor as to part of the decree, by the widow as to part of the decree, and on behalf of the infant son as to part of the decree, present six questions for our consideration, namely:

Is the widow entitled to have the profits from the operation of the shoe business by the executor pending sale thereof distributed as income?

Is the widow entitled to share the income until settlement of the estate and until the trust fund provided by the will is actually established?

Is the widow entitled to income on a trust fund of $500,000 as of the date of her remarriage?

Is the executor clothed with discretion to use any part of the income for the support, maintenance and education of testator's infant son? If so, did he exercise a sound discretion in allowing $5,000 per annum for such support, maintenance and education?

Is the widow chargeable for federal estate taxes paid by

the executor on the proceeds of insurance policies on the life of testator paid directly to said Audrey L. Carroll?

Is the widow chargeable for federal estate taxes paid by the executor on the value of certain real property, title to which testator and his wife held, in his lifetime, as tenants by the entireties?

Testator's will provided:

"Should I own or conduct a shoe business in the city of New York or elsewhere at the time of my decease, then and in such case I direct my said executor to continue such business after my decease for such time as he shall deem it most advantageous to the benefit of my estate to sell and dispose of same, but not beyond the period, however, of two years from my decease, hereby absolving my said executor from all liability for any loss that may occur by reason of his continuing said business."

The will provided a gift of $100,000 outright to the widow, and all the rest residue and remainder of the estate was given as follows:

"(A) A one-third part thereof to my executor hereinafter named, to have and to hold the same in trust for the benefit of my said wife upon and for the following uses and purposes, to wit:

"To invest and keep the same invested and to receive the income arising therefrom, and after first deducting all the necessary expenses incurred in the administration of said estate, to pay over unto my said wife such net income arising therefrom for and during the term of her natural life or for so long as she shall remain my widow.

"Upon the death of my said wife, Audrey Coward, without having married then the share so above given in trust for her benefit, I give, devise and bequeath unto my lawful issue, in equal shares.

"Upon the remarriage of my said wife, I direct that the trust herein created for her benefit shall continue only in so far as the sum of five hundred thousand ($500,000.00) dollars thereof, and that upon such remarriage such trust shall cease and terminate as to the balance of said fund as shall exceed the sum of five hundred thousand ($500,000.00) dollars, and in such case I give and bequeath such part of such fund so given in trust as shall exceed said sum of five hundred thousand ($500,000.00) dollars, to my lawful issue, to be divided equally between them, share and share alike.

"From and after the remarriage of my said wife, I direct my said trustee to keep said part of said trust fund invested, to wit, the sum of five hundred thousand ($500,000.00) dollars, and after the payment of all necessary expenses in the administration thereof, to pay over to my said wife for and during the term of her natural life the income that shall arise therefrom in quarterly payments or such other payments as he deems best."

The balance of two-thirds of the residue was given to his lawful issue, with direction that the executor should hold such share in trust for any minor child or children, and that the trustee shall "keep such share or moneys invested, and to receive the income arising therefrom and apply so much thereof for the support, maintenance and education of such child or children until he or she arrive at the age of twenty-one years," when distribution is to be made to him or her.

The profits of the shoe business for the two years following testator's death were in excess of $800,000. At the time of testator's death, unpaid debts of the shoe business aggregated almost that sum.

The court below found that the distributable income to the widow "includes the profits derived by the executor from his conduct of the testator's established shoe business in the ordinary course of such business."

In the celebrated case of *Howe* v. *Earl of Dartmouth, 7 Ves. 137; 32 Rep. 56,* Lord Eldon established the rule that where there is a general bequest of a residue of personal estate for life, with remainder over after the death of the life tenant, the whole residuary fund is to be invested, and until such investment is made the tenant for life is not entitled to the actual income produced by the residuary estate, but to interest from the testator's death on the value thereof estimated as of that time. The reason given by Lord Elden (*32 Rep.*—at *p. 60*) is "as in the one case that, in which the tenant for life has too great an interest, is melted for the benefit of the rest, in the other that, of which if it remained in specie, he might never receive anything, is brought in; and he has immediately the interest of its present worth."

This rule has been uniformly applied in this state, when the testator has not clearly expressed an intention that the life tenant should enjoy the property in specie.

In *Ackerman's Adm'rs* v. *Vreeland's Ex'r, 14 N. J. Eq. 23,* Chancellor Green interpreted the rule laid down in *Howe* v. *Dartmouth* as follows:

"If chattels or personal property of any description be not given specifically, but generally as goods and chattels, or as a residue of personal estate, they must be converted into money, the interest only enjoyed by the tenant for life, and the principal reserved for the remaindermen. *Howe* v. *Earl of Dartmouth, 7 Ves. 137; 2 Kent's Com. 353; Lew. Perp. 100; Benn* v. *Dixon, 10 Sim. 636; Chambers* v. *Chambers, 15 Sim. 183; Randall* v. *Russell, 3 Mer. 193; Covenhoven* v. *Shuler, 2 Paige 122; Clark* v. *Clark, 8 Paige 152; Cairns* v. *Chaubert, 9 Paige 163.*

"The rule prevails, unless there be in the will an indication of a contrary intention."

In *Helme* v. *Straler, 52 N. J. Eq. 591,* Chancellor McGill said:

"Where a testator bequeaths the residue of his property without specific description, or, in other words, indicating an intention that it shall be enjoyed in specie, first to a tenant for life and then to a remainderman, and thus manifests that the same fund shall be successively enjoyed by both, the necessary inference and established rule in equity are, that it must be invested as a permanent fund so that the successive takers shall enjoy it in an equally productive capacity. But where it consists in whole or in part of property which is in its nature perishable, which for some reason cannot be converted into money or cannot be so converted without great sacrifice of both principal and interest, the tenant for life will not be entitled to the annual produce which the property thus perishing is actually making, but to interest from the testator's death on the value thereof estimated as of that time. *Howe* v. *Earl of Dartmouth, 7 Ves. 137; Gibson* v. *Bott, 7 Ves. 89; Fearns* v. *Young, 9 Ves. 549; Meyer* v. *Simonson, 5 De G. & S. 723; 21 L. J. Ch. 678; Brown* v. *Gallatly (L. R.), 2 Ch. App. 751; Kinmonth* v. *Brigham, 5 Allen 270; Minot* v. *Thompson, 106 Mass. 583; Westcott* v. *Nickerson, 120 Mass. 410; Spear* v. *Tinkham, 2 Barb. Ch. 211; Healey* v. *Toppan, 45 N. H. 243; 2 Wms. Ex. 1393; 2 White & T. Lead. Cas. 676 et seq.* See, also, *Howard* v. *Executors of Howard, 1 C. E. Gr. 486; Hull* v. *Eddy, 2 Gr. 169, 176;*

*Ackerman's Administrator* v. *Vreeland's Executor, 1 McCart. 23, 27.* The reason of this rule is the just consideration that the testator has the interest of the successive takers equally in view and intends that there shall be equality in their respective enjoyments."

In *Meyer* v. *Simonsen, 5 De G. & S. 723; 64 Rep. 1316,* the court in following the rule laid down in *Howe* v. *Earl of Dartmouth,* said that there are three distinct cases to which the principle applies. "The third class is where property is so laid out as to be secure, and to produce a large annual income, but is not capable of immediate conversion without loss and damage to the estate as in *Gibson* v. *Bott, supra,* and *Caldecott* v. *Caldecott, 1 Y. & C. C. C. 312;* there the rule is not to convert the property, but to set a value upon it, and to give the tenant for life four per cent. on such value, and the residue of the income must then be invested, and the income of the investment paid to the tenant for life, but the *corpus* must be secured to the remainderman."

In the instant case the shoe business was not property specifically bequeathed, but was bequeathed as a residue of personal estate. The testator did not indicate an intention that it should be enjoyed in specie; indeed, the contrary intention appears. He directed that the shoe business should be operated by his executor for such time as the executor should deem it most advantageous to the benefit of his estate, but not beyond the period of two years, when it was to be sold. By paragraph 8 of his will, testator directed his executor to invest or reinvest funds of the estate in first bonds and mortgages on improved real estate, or in such securities as are now authorized by law for investment of estate or trust funds. In the event of remarriage of his widow, her participation in income is changed from that arising from one-third of the residue to that arising from $500,000 thereof. These and other provisions of the will indicate an intention that the executor shall convert all of the estate and hold the proceeds, and that, pending conversion, the tenant for life shall not enjoy the benefit of the property in specie. *Ott* v. *Tewksbury, 75 N. J. Eq. 4.*

In the instant case, the application of this rule results in a just and equitable distribution of income as between the life tenant and the remainderman.

The decree is erroneous in this respect.

The appellant executor urges that the widow is not entitled to share the income until settlement of the estate and until the trust fund is actually established. The court below decreed to the contrary. The rule is stated in *Welsh* v. *Brown, 43 N. J. Law 37,* by Chief-Justice Depue as follows:

"On a bequest of the residue of the testator's estate, or of some aliquot part or proportion thereof, in trust to pay the interest or income to a legatee for life, with a gift of the principal over at his death, the interest or income payable to the life tenant will be computed from the testator's death." Citing numerous cases.

It was said by the court of errors and appeals in *VanBlarcom* v. *Dager, 31 N. J. Eq. 783:*

"The rule that, where the residuary personal estate is given to a legatee for life, the interest thereon accruing from the testator's death, shall, in the absence of any direction to accumulate, go to the tenant for life, is declared, by the chancellor, to be established."

See, also, *Green* v. *Green, 30 N. J. Eq. 451; Green* v. *Blackwell, 32 N. J. Eq. 768.*

The appellant executor argues that, while no specific language is used in the will designating a time when the trust fund is to be set up, the effect of a reading of the whole will is that the intention of the testator is shown to be that no trust fund should be set up until after the shoe business had been sold and the proceeds invested. It is true that under the rule of *Howe* v. *Earl of Dartmouth* the actual income is not to be distributed to the life tenant until the property is converted and the actual trust investment made, but, as stated above, pending the establishment of the trust, the life tenant is entitled to interest on the value of the residuary estate estimated as of the time of the death of testator.

The next question submitted is whether the widow is entitled to income on $500,000 as of the date of remarriage. The court below so decreed.

By the terms of testator's will, upon remarriage his widow is to have the income from a fund of $500,000 instead of the income of one-third of the whole residue. The will, therefore, provides for the setting up of a trust fund in a definite sum, $500,000, upon the remarriage of the widow. Since this is not a "general bequest of a residue of personal estate" but a bequest of a definite sum out of the residue, there is no reason why the establishment of this trust fund should await the time when the shoe business is sold and the entire residue invested. It follows that Mrs. Carroll was entitled to receive interest on her one-third share of the residuary estate, estimated as of the time of testator's death, down to the time of her remarriage, and thereafter to the income produced by a fund of $500,000 established as of that date.

The next question raised on these appeals concerns the validity and sufficiency of an allowance of $5,000 per year for the support, maintenance and education of testator's infant son.

The court below construed the will as directing the trustee to apply so much as might be reasonably necessary of the income as might be held for the son, for the support, maintenance and education of the child. We concur in this construction. This conclusion renders it unnecessary to determine whether or not the widow may be required to provide from her own funds for her infant son's support, maintenance and education.

The court below determined that the allowance of $5,000 is inadequate, and that the executor did not exercise a sound discretion but acted arbitrarily in fixing said amount.

Our examination of the proofs in this case persuades us that it does not appear that the executor abused the discretion vested in him, and that, in view of all of the existing circumstances, the allowance of $5,000 per annum is a fair and reasonable one at this time.

The decree should be reversed in this regard.

The widow appeals from so much of the decree as decrees that the executor is entitled to reimbursement for the proportionate amount of the federal estate taxes paid by him on the

inclusion in such assessment of the proceeds of insurance policies paid directly to said Audrey L. Carroll, and, also, of the value of the real property, title to which testator and his wife held, in his lifetime, as tenants by the entireties.

The vice-chancellor filed the following conclusions on the question of the tax on the proceeds of the insurance policies:

"The ninth clause of the testator's will reads as follows:

" 'I direct that any and all inheritance taxes whatsoever, that may be levied or assessed against the share herein given by any of the provisions hereunder to my said wife, shall be paid out of my said estate, it being my intention and wish that the bequests or provisions herein made to her or for her benefit shall go to her free from any and all inheritance or other taxes.'

"It is urged in behalf of the testator's widow that all taxes paid by the testator's executor were properly chargeable to the residuary estate, and that the executor is not entitled to reimbursement from her for taxes represented by Glen Ridge property and insurance moneys received by her. The concluding part of the aforesaid testamentary clause expressing the testator's intention and wish that 'the bequests or provisions herein made to her or for her benefit shall go to her free from any and all inheritance or other taxes' manifests that the testator did not contemplate payment from his estate of taxes on the Glen Ridge property (title to which was held by testator and his wife as an estate by the entirety) or of taxes on moneys payable directly to his widow, on policies of insurance issued upon his life in which she was designated as beneficiary. The fact that the executor was obliged under federal laws to include the amount of insurance carried on the life of the testator as part of the testator's gross estate for the purpose of computing federal inheritance taxes payable is of inconsequence in the matter *sub judice*. The federal law required the executor to pay from the testator's estate the amount of inheritance taxes payable on such insurance moneys which were included as part of testator's gross estate, but, notwithstanding, the testator's widow as beneficiary named in the policies of insurance and to whom the insurance money was paid is required to reimburse the executor there-

for. The fact that the testator reserved in his contracts of insurance the right to make a change in the designation of the beneficiary named in the policies issued upon his life is of no consequence in the matter *sub judice* as between the executor and the testator's widow. The federal law contemplates payment of inheritance taxes by executors, and the executors are entitled to reimbursement from the person receiving the moneys upon which the inheritance tax is paid, and if such person and the executor cannot agree with respect to such reimbursement recourse may be had to the state courts for a settlement of the matter."

We agree with these conclusions. The federal statute specifically provides for reimbursement by the beneficiary of life insurance policies to the executor for taxes paid, and the will in the instant case cannot be said to impose this tax upon the residuary estate.

With respect to the tax on the estate by the entirety, we feel that the provision of clause nine of the will likewise controls. The federal statute provides that no apportionment of the tax among persons liable shall be made by the taxing authority. The cases hold that this is a matter for settlement in the state courts. *Edwards* v. *Slocum, 287 Fed. Rep. 651; affirmed, 264 U. S. 61; 68 L. Ed. 564.* It has been held in Massachusetts that "where no other provision is made, taxes must be paid out of the residue of the estate." *Bemis* v. *Converse, 246 Mass. 131; 140 N. E. Rep. 686.* However, in the instant case there is another provision, because the fair interpretation of the ninth clause of the will is that the residue is made liable for all taxes on provisions made for the wife by the will, and for nothing else in the way of taxes for her benefit. Mrs. Carroll, of course, took nothing by the will with respect to the real estate held by her and her husband as tenants by entireties. Her estate was not enlarged by the death of her husband, but she became entitled to the use and enjoyment of the whole. *Den* v. *Hardenbergh, 10 N. J. Law 49.* So that, without deciding what the result might be if there were no expression in the will, we conclude that the executor is entitled to reimbursement from the window for the

tax in question under the provision in the ninth clause of the will.

The decree under review will be sent back to the court of chancery to be modified in accordance with the views herein expressed, to wit: that the profits from the operation by the executor of the shoe business are not distributable as income to the life tenant; that Mrs. Carroll is entitled to interest on one-third of the value of the entire residuary estate, estimated as of testator's death, from the time of his death to the time of her remarriage; that she is entitled to the income from a trust fund of $500,000 set up as of the time of her remarriage; and that the allowance of $5,000 per year for the support, maintenance and education of the infant child of testator is fair and reasonable, and a proper exercise of the discretion of the executor. In all other respects the decree will be affirmed.

*For modification*—The Chief-Justice, Trenchard, Parker, Case, Bodine, Donges, Heher, Perskie, Van Buskirk, Kays, Hetfield, Dear, Wells, Dill, JJ. 14.