On February 10th, 1941, a decree in the above entitled matter was filed, which, in part, recites: "the complainant was entitled to the total net income of the estate under the will * * * that the complainant did not receive the total net income of the estate," and that the "defendants * * * *Page 357 
account under oath for all the incomes, rents, and profits of all the assets of this estate, real and personal, received by or chargeable to them since the 17th day of October, 1931, and all receipts and expenditures of all the assets of the estate, real and personal, since October 17th, 1931 * * *, and that the master make a report on what balances appear to be due from the defendants to the said complainant." See Breidenbach v.Breidenbach, 128 N.J. Eq. 558; 17 Atl. Rep. 2d 596. An appeal was taken to the Court of Errors and Appeals, which unanimously affirmed this court's decree. 130 N.J. Eq. 214;21 Atl. Rep. 2d 805. After the affirmance by the Court of Errors and Appeals, an order was filed directing Andrew J. Crummy, a master, to state an account between the parties to the suit. The defendants filed an account with him on November 14th, 1941, which, it is alleged, substantially conforms to the decree in so far as it lists all of the incomes, rents and profits of the assets of the decedent's estate.
Testimony was taken on the account before the master. In the course of the hearing before him, the master said (pages 76, 77, Transcript of Testimony): "I suggest that the account be restated and that the charges to corpus or income or both be allocated, part to the life tenant and part to the remaindermen. As to that apportionment, that is up to the attorneys for the accountant to decide what should be properly chargeable, and the attorneys for the life tenant may take exception to those things. I think that if the account is re-stated and exceptions are filed to it, then all that we will have to try is the matter of the exceptions here. But as the account stands to-day, as I can see it, there is duplication in some schedules that would have to be taken out and the matter re-stated. I don't think it is any unsurmountable task at all and it should not take but a very short time to re-state that account." On November 21st, 1941, a re-stated account was filed, which the complainant contends is not drawn in accordance with the master's instructions, but is drawn "on a 4% theory." While the trustee-defendants list the payments allegedly made to the complainant, they charge themselves with only 4% per annum on their valuation *Page 358 
of the net estate. Subsequently, the defendants gave the complainant notice of a motion which was argued on December 8th, 1941, wherein it was stated that the "master to whom the above matter has been referred" be further directed as follows:
"1. That the complainant as life beneficiary of the residuary estate left by Rudolph A. Breidenbach, deceased, under his will, is entitled but to interest at 4% per annum from testator's death on the value of such residuary estate computed as of his death. The complainant is to be limited to such interest by virtue of the fact that the executors and trustees under testator's will became under a duty to sell such residuary estate as of his death. Such duty arose for the reasons that:
"(a) The assets of the residuary estate were and are improper investments for them to retain.
"(b) Such assets were required to be sold to pay the testator's debts, funeral and administration expenses and a bequest, totaling in all $12,464.56 as of his death, as stated in the account before the master, together with the New York Estate Tax.
"(c) The testator's will directed such sale.
"2. That the master limit his findings to the determination of the balances, if any, due from the defendants to the complainant pursuant to the aforesaid directions and that he make his report on such balances with all convenient speed.
"3. And for such other directions and instructions to the master as to the court may at this time seem advisable.
"Please take further notice that I shall on such application ask the court to take judicial notice of the common law of the State of New York pursuant to the statute in such case provided."
The complainant asserted that "The motion now made by the defendants is not what it purports to be. It purports to be a request for further directions to the master, and asks that the master be directed to adopt the 4% theory, rather than to account for the actual income and disbursements of the estate. It, in effect, asks this court to reverse a decree that it made after a full, fair and impartial trial, after an affirmance of that decree by our Court of Errors and Appeals, *Page 359 
and after the defendants had already filed an account in substantial conformity to this court's decree."
The defendants base their motion on the principles enunciated in Gaede v. Carroll, 114 N.J. Eq. 524; 169 Atl. Rep. 172.
That case is not parallel with the instant case. It is based on an entirely different state of facts. Here the complainant is entitled to the "total net income of the estate," which was not the situation in Gaede v. Carroll.
The defendants' motion, in effect, asks for a substantial change in the decree made by this court and approved by the Court of Errors and Appeals, and undertakes to introduce a theory which had at no time before been raised in the case. The motion is ill-timed and late. It is also an attempt to by-pass ChanceryRule 186, which outlines the practice and procedure before the master. The rule is a guide not only for the master, but for counsel as well.
The order of reference to the master directed that the defendants "account under oath for all the incomes, rents and profits of all the assets of this estate, real and personal, received by or chargeable to them * * * and of the present condition of the estate, before Andrew J. Crummy, Esq., one of the masters of this court." The defendants obeyed the order. They filed their account with the master. The master's hearing proceeded and testimony was taken. In the course of it, the defendants decided upon the motion aforesaid. The defendants' new theory was not raised at the time the order of reference to the master was applied for, or at the time of the filing of the original account with the master on November 14th, 1941. Not until after they filed an account allegedly in accordance with the original decree herein, and the employment by them of additional counsel, did the 4% theory seem to take hold of them.
In the case of Gaede v. Carroll, supra, the testator provided that his business was to be continued by his executor and sold within two years. He bequeathed a gift of $100,000 to his widow; all the rest, residue and remainder of his estate he directed to be placed in three trust funds, one of which was payable to his widow. The executor produced a profit of some $800,000 from the business before it was disposed of. *Page 360 
The widow claimed the profits earned by the executor pending the sale of the business. The court decided that the widow was not entitled to those profits; that she was only entitled to the income of the trust after it was formed, and that the interest should be computed from the time of the testator's death. In that case the trustee did what he was directed to do.
In the original case, the trustees without testamentary authority, conveyed the estate's realty to a corporation, the stock of which they owned, and the income therefrom they paid to the complainant. Their conduct was disapproved by our courts; they now discover a new idea which likewise, in the opinion of this court, lacks merit.
The principles involved in the instant case in some respects are like those passed upon in the case of Sturchio v. D'Auria,9 N.J. Mis. R. 1001; 156 Atl. Rep. 659.
The complainant herein has reached the advanced age of eighty-eight years — the individual defendants, her children and members of her family, do not appear to lose sight of that fact. They have stubbornly fought her throughout her expensive and protracted legal efforts to preserve her rights under the plain provisions of her departed husband's will. While I will not say that the defendants' unfilial conduct is motivated by her great age and declining years, yet, I will say, I strongly suspect it.
Equity and good conscience obviously will not permit a finding that an acceptance of a plan by a person or persons acting in a representative capacity is in "good faith" where such person or persons are obtaining an unmerited benefit from the plan.
I do not think that there is the slightest justification for the defendants' motion, and it calls for dismissal. *Page 361