Matthias, J.
It should be noted at the outset that although the tax involved in this case is the federal estate tax (Sections 800 to 938, inclusive, Title 26'r U. S. Code) the construction of the statutes of this state relating to the descent and distribution of the-estate of a decedent is the question primarily presented. (Section 10503-4 eb seq., General Code.)
A pertinent statement of Mr. Justice Murphy in the case of Riggs, Gdn., v. Del Drago, 317 U. S., 95, 98, 87 L. Ed., 106, 63 S. Ct., 109, is as follows:
“In the Act of 1916 Congress turned from the previous century’s inheritance tax upon the receipt of property by survivors (See Knowlton v. Moore, 178 U. S., 41; Scholey v. Rew, 23 Wall., 331) to an estate-tax upon the transmission of a statutory ‘net estate’' by a decedent. That act directed payment by the-executor in the first instance, section 207, but provided1 also for payment in the event that he failed to pay, section 208. It did not undertake in any manner to-specify who was to bear the burden of the tax. Its legislative history indicates clearly that Congress did not contemplate that the Government would be interested in the distribution of the estate after the tax. was paid, and that Congress intended that state law-should determine the ultimate thrust of the tax. That Congress, from 1916 onward, has understood local! law as governing the distribution of the estate after-payment of the tax (with the limited exceptions created by Section 826 [c] and [d] of the Internal .Revenue-Code, to be discussed presently) is confirmed by Section 812 (d) of the Code, dealing with charitable deductions, which recognizes that estate taxes may be payable in whole or in part out of certain bequests, etc.,. *479 ‘by the law of the jurisdiction under which the estate is administered.’ The administrative interpretation .has been in accord, and that has been the understanding of the federal courts, and of some state courts.”
The question now presented has not been heretofore •considered by this court. It arises by reason'of the enactment of Section 812 (e), Title 26, U. S. Code, effective in 1948, by which Congress created the so called “marital deduction” under which bequests and •certain other transfers to a surviving spouse qualify as deductions from the gross estate of a decedent in the computation of the federal estate tax. Section 812 is quite lengthy but it may be summarized and its pertinent provisions stated as follows:
“For the purpose of the tax the value of the net •estate shall be determined * # * by deducting from the value of the gross estate—
“(a) Exemption. An exemption of $100,000;
“(b) Expenses, losses, indebtedness, and taxes. “Such amounts—
“(1) for funeral expenses,
“(21 for administration expenses,
“(3) for claims against the estate,
“(4) for unpaid mortgages * * *, and
“ (5) reasonably required and actually expended for the support during the settlement of the estate of those ■dependent upon the decedent, as are allowed by the laws of the jurisdiction * * *.
it# # #
“(c) Property previously taxed. * * *
i i * # #
“(d) Transfer for public, charitable, and religious -uses. * * *
“(e) Bequests, etc., to surviving spouse
“(1) Allowance of marital deduction.
“(A) In general. An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse * * *.
*480 a* # *
“(3) Definition. For the purposes of this subsection an interest in property shall he considered as passing from the decedent to any person if and only if—
i i ft ft ft
“(C) such interest is the dower or curtesy interest (or statutory interest in lieu thereof) of such person as surviving spouse of the decedent * * #.”
The nature of the “marital deduction” is discussed in Montgomery’s Federal Taxes, Estates, Trusts and Gifts (1950-1951), 763, in part as follows:
“The Revenue Act of 1948 made drastic changes in the theory of the taxation of estates. One fundamental change is in the deductions allowable in computing the net estate subject to tax, effected through the addition to the Code of subsection 812 (e), which provides for the allowance of a marital deduction, to the extent authorized therein, for the amount of certain interests in property included in the decedent’s gross estate which pass, or have passed, from the decedent to the surviving spouse. * * *
• “Prior to the enactment of the Revenue Act of 1942, community property enjoyed a supposed estate tax advantage. Upon the death of either spouse, only one-half of the community property was includible in the gross estate. The 1942 Act amended the Code [sections 811 (d) (5), 811 (e) (2), 811 (g) (4)] to provide in substance that upon the death of a spouse, the entire community property was to be included in the gross estate of the decedent, less only such part as might be shown to have been received as compensation for personal services rendered by the surviving spouse or from the separate property of the surviving spouse, provided, however, that the amount included might not be less than the part subject to the decedent’s power of testamentary disposition. Thus, if the en *481 tire community property were attributable to tbe husband, the entire amount would be includible in his gross estate if he should die first, whereas, if the wife were the first to die, then the one-half over which she had a power of testamentary disposition would be includible in her gross estate. These provisions of the 1942 Act undoubtedly removed whatever estate tax advantage community property may theretofore have enjoyed, and in requiring that there be included in the husband’s estate property in which his wife had acquired an interest during his lifetime and over which she had no power of testamentary disposition and which would be included in the wife’s estate if she died first, it is at least arguable that the act swung the pendulum to the other side and placed community property at an estate tax disadvantage.
“The Revenue Act of 1948, by repealing sections 811 (d) (5),'811 (e) (2) and 811 (g) (4) of the Internal Revenue Code, has restored to community property the same status for estate tax purposes which it had jjrior to the 1942 Act. * * *
“To place the property of married persons in common-laAV states on a more nearly equal estate tax basis Avith the uoav reinstated ‘splitting’ principle of community property, the 1948 Act also amended the' law to permit a married person holding separate property to achieve substantially the same ‘splitting’ advantage, provided that he also accepted some of the community property disadvantages. This has been accomplished by the addition to the Code by section 361 of the 1948 Act of a new subsection 812 (e) providing for the allowance of a ‘marital deduction’ in computing the net estate subject to tax.
“The amendments to the estate' tax law appear to achieve at least substantial equality between community property and. separate property so far as the federal estate tax is concerned. * * *
*482 £ £ The marital deduction is not limited in its application to residents of common-law states; it also applies to the separate but not the community property of residents of community property states. * * *
“Prior to the 1948 Act, the estate tax had been determined with reference only to the decedent’s interest in the property comprising his estate and it was generally unnecessary to determine the tax with reference to the decedent’s disposition of the property, except in the case of charitable bequests. Under the 1948 Act amendments, the amount of a decedent’s net taxable estate will vary according to the disposition of the estate in direct proportion to the value of the decedent’s interest in property passing to the surviving spouse which is allowable as a marital deduction under the limitations of subsection 812 (e).”
It is interesting to note that nowhere in the federal statutes is the “marital deduction” denominated an exemption. That property is not exempt from the tax; it was only separated from the taxable property. The marital deduction is allowable only to the extent that such interest is included in determining the value of the gross estate. In the estate of the surviving spouse it does not qualify under section 812 (c) as property previously taxed. That section provides in part:
£ £ The following property shall not, for the purposes of this subsection (property previously taxed), be considered as property with respect to which a deduction may be allowed: (A) property received from a prior decedent who died after December 31, 1947, and was at the time of such death the decedent’s spouse, (B) property received by gift after the date of the enactment of the Revenue Act of 1948 from a donor who at the time of the gift was the decedent’s spouse, and (C) property acquired in exchange for property described in clause (A) or (B).”
*483 Thus it is to he noted that the property so received will be subject to the federal estate tax in the estate of the surviving spouse, whereas property passing from the deceased spouse to others will be “property previously taxed” in the estate of such other beneficiaries should they die within a period of five years after the death of such spouse. Section 812 (c) (1).
As stated above it is clear that the plan of federal estate taxation which created the “marital deduction” purports to place a surviving spouse in common-law states on a taxable basis comparable to that of a surviving spouse in states in which the property of married people is considered as community property. The question presented here is whether a surviving spouse, entitled to a “marital deduction” under Section 812 (e), Title 26, U. S. Code, may under the Ohio laws of descent and distribution receive such property free from the impact of the federal taxes.
This court is necessarily relegated to an examination of the pertinent statutes of Ohio under which the distribution to the widow of her share of her husband’s estate must be determined. The election which the widow made is authorized by the provisions of Section 10504-55, General Code, which is as follows:
“After the probate of the will and filing of the inventory, appraisement and schedule of debts, the Probate Court on the motion of the executor or administrator, or on its own motion, forthwith shall issue a citation to the surviving spouse, if any, to elect whether to take under the will or under the statute of descent and distribution. In the event of election to take under the statute of descent and distribution, such spouse shall take not to exceed one-half of the net estate. The election shall be made within one month after service of the citation to elect, or if no citation is issued, within nine months after the appointment of the executor or administrator, whether *484 or not a citation be issued as herein provided. On motion filed before the expiration of such nine months and for good cause shown, the court may allow further time for the making of the election. The election shall be entered on the journal of the court.”
The estate which passes to the surviving spouse, by virtue of an election, is determined by the provisions of Section 10503-4, General Code, the pertinent parts of which are as follows:
“When a person dies intestate having title or right to any personal property, or to any real estate or inheritance in this state, such personal property shall be distributed, and such real estate or inheritance shall descend and pass in parcenary, except as otherwise provided by law, in the following course:
i i :K- *
“3. If there be a spouse and more than one child, or their lineal descendants, surviving, one-third to the surviving spouse and the remainder to the children equally, or to the lineal descendants of any deceased child, per stirpes.”
The contention of the executors is based in part on the provisions of Sections 10509-181, 10509-182 and 10509-121, General Code.
Section 10509-181, General Code, provides in part as follows:
“When six months have expired after the appointment of the executor or administrator and one month has expired after approval of the inventory, and the surviving spouse has made his or her election, and when all debts are paid, except debts not due and payable, and claims rejected within two months or in suit and when provision has been made as prescribed in this chapter for any debts which are not due and payable, the executor or administrator may provide for the payment of such rejected claims and claims in suit, if any, by setting aside enough assets for that *485 purpose, to the satisfaction of and in the manner directed by the Probate Court, and, having done so, may distribute to the legatees entitled thereto under the will (if there be no action pending to set aside the will) or to the distributees entitled thereto by law, in cash or in kind, any part or all of the assets of the estate not set apart as herein provided and not required for any other purpose. Each legatee or distributee shall be liable to return such assets, or the proceeds therefrom, should they be necessary to pay any such rejected claims or claims in suit.”
Section 10509-182, General Code, is as follows:
‘ ‘ When nine months have expired after the appointment of the executor or administrator, and the surviving spouse has made his or her election, a legatee or distributee may apply to the Probate Court' for an order requiring the executor or administrator to distribute the assets of the estate, either in whole or in part, in cash or in kind. Upon notice to the executor or administrator, the court shall inquire into the condition of the estate, and if all debts and claims have either been paid or adequate provision has been or can be made for their payment, the court shall make such order with reference to distribution of the estate as the condition of the estate and the protection of all parties interested therein may demand. The order of the court shall provide that assets be set aside for the payment of claims rejected within two months or in suit, if any, and each claimant for whom assets are to be set aside shall be entitled to be fully heard as to the nature and amount of the assets to be set aside for payment of his claim, and as to all other conditions in connection therewith. Each legatee or distributee receiving distribution from the estate shall be liable to return the assets distributed to him, or the proceeds therefrom, should they be necessary to pay such claims. The court, upon its own motion or upon ap *486 plication of the executor or administrator, as a condition precedent to any distribution, may require any legatee or. distributee to give bond to the state of Ohio, with surety or sureties approved and in an amount fixed by the court, conditioned as provided in the preceding section or as may be directed by the court. Such bond may be in addition to the assets to be set aside hereunder, if any; or partially or wholly in lieu thereof, as the court shall determine.”
These provisions, it is to be noted, require the payment or the securing of the payment of all debts before distribution of the estate.
Section 10509-121, General Code, provides the order in which the debts shall be paid. This section provides :
“Every executor or administrator shall proceed with diligence to pay the debts of the deceased, and shall apply the assets in the following order:
“1. Costs and expenses of administration.
‘ ‘ 2. Bill of funeral director not exceeding three hundred and fifty dollars, such funeral expenses other than the bill of the funeral director as are approved by the court.
“3. The allowance made to the widow and children for their support for twelve months.
“4. Debts entitled to a preference under the laws of the United States.
“5. Expenses of the last sickness of the decedent.
“6. Personal property taxes and obligations for which the decedent was personally liable to the state of Ohio or any subdivision thereof.
“7. Debts for manual labor performed for the deceased within twelve months, preceding decedent’s death, not exceeding one hundred and fifty dollars to any one person.
“8. Other debts as to which claims have been presented within four months after the appointment of the executor or administrator.
*487 “9. All other debts for which claims have been presented according to law after four months from the appointment of the executor or administrator.”
It is the position of the executors that the federal estate tax, under paragraph four of Section 10509-121, General Code, is included in “debts entitled to a preference under the laws of the United States,” and that construing these three sections together they are obligated to pay in full the federal estate tax as a debt of the estate before any distribution may be made.
The brief of the executors contains the following:
“These sections necessarily determine the extent of the estate in which either the legatees or ‘the distributees entitled thereto by law’ may participate. By directing the administrators to pay debts and by forbidding distribution until debts are paid, the Legislature has fixed the ultimate estate which may be distributed, whether the distributees take the residue under a will or are entitled by law to take the distributable estate as widow and children of an intestate or as a widow who has elected against the will.”
The decision of the Probate Court, approved and adopted by the Court of Appeals, places reliance on the decision of this court in the case of Young Men’s Christian Assn. v. Davis, 106 Ohio St., 366, 140 N. E., 114. The syllabus of that case is as follows:
“1. The tax or excise provided for by the federal Act of 1918, entitled an ‘estate tax,’ is a legal charge made upon the decedent’s estate and his right to transmit it either by will or by law as an intestate.
‘ ‘ 2. The charges imposed by law upon an estate must-first be paid out of the estate as a whole, before payment of the charges imposed upon the estate by the will of the testator.
“3. A residuary devisee or legatee is presumed in law to be in the position of the last lienholder, after all prior lawful claims and charges have been satisfied out of the estate.”
*488 The judgment in that case was affirmed by the Supreme Court of the United States in Young Men's Christian Assn. of Columbus, Ohio, v. Davis, 264 U. S., 47, 68 L. Ed., 558, 44 S. Ct., 291, the syllabus of which ease reads as follows:
“1. The estate tax imposed by the Revenue Act of 1918, c. 18, 40 Stat. 1096, is not a succession tax upon the benefits received by devisees and legatees, but an ■ excise or death duty upon the transfer of the decedent’s estate.
“2. In providing that bequests to religious and charitable corporations shall be deducted in determining the value of the net estate upon which the tax is imposed, section 403, (3), the act does not undertake to exempt the recipients of such charitable gifts from the burden of the tax if placed upon them by the will.
“3. Hence, where the charitable gifts are residuary, and are duly taken into account in ascertaining the net taxable estate and the amount of the tax, the act offers no obstacle to charging the tax, with other costs and expenses, against the gross estate and satisfying specific devises and bequests in full, before the charitable gifts are satisfied.”
An examination of the opinion of this court in the Y. M. C. A. case, supra, discloses that the cause originated as an action for the construction of a will and for advice and direction of the court as to the federal estate tax and the distribution of the assets of the estate. The will in question had numerous specific bequests and devises to relatives and friends, and then by residuary clause gave “all the rest, residue, and remainder” of the estate to certain charitable, religious and educational institutions. The controversy involved in that case was whether the residuary legatees could be required to pay the federal estate tax since a deduction was allowed for the charitable bequests. In the opinion of the court it is stated:
*489 “It would be a strange legal paradox, indeed, to hold residuary devises, legacies or bounties prior to those that are express and specific. The plaintiffs in error are designated for the first time in item 10, after all specific devises and legacies have been provided for, in the following language: ‘All the rest, residue and remainder of my estate and property, real, personal and mixed, of every nature and description, or wheresoever situate * # * I give, devise and bequeath to The Young Men’s Christian Association,’ etc. This fact affords a clear and conclusive presumption that all charges imposed by the law or by the testator should be paid out of the estate before any right should ripen in behalf of the residuary devisees or legatees under this item.
“This view supports the undoubted intention of the testator in the making of the will in all its various provisions, as well as the plain provisions of the federal statute. ’ ’
The gist of the decision of the Probate Court in the instant case is found in the following statement in the opinion of that court:
“We come now to the question of how the share of the widow in this case is to be determined under the Ohio law. The widow elected to take under the statute of descent and distribution by virtue of Section 10504-55, General Code, which section provides that ‘in the event of election to take under the statute of descent and distribution, such spouse shall take not to exceed one-half of the net estate.’
“But under Section 10503-4, General Code, the statute of descent and distribution, the widow is limited to a one-third share. So instead of the widow taking one-half of the net estate she takes one-third of the net estate, the decedent having left two children. Under our statutes governing administration and distribution of estates, the net estate for distribution is not deter *490 mined until all claims and charges against the estate are satisfied; these include the cost and expenses of administration, funeral bill, statutory allowances to the surviving spouse, debts and taxes, including estate taxes. As to estate taxes being a charge against the estate see the case of Tax Commission v. Lamprecht, 107 Ohio St., 535, cited with approval in In Re Estate of Catch, 153 Ohio St., 401.”
The full statement of the applicable federal and state statutes set forth herein discloses the absence of any specific legislative provision controlling or affecting the determination of the question presented. Likewise the Y. M. C. A. case, supra, relied on by the executors is of limited pertinence since that case was decided prior to the enactment of Section 812 (e) and involved only the construction of a will and hence presented no question of federal estate taxes where distribution is made under the statute of descent and distribution. From our examination of the authorities we are convinced that an entirely new question is presented in this case on which there is neither specific legislation nor applicabla decisions of this court.
The General Assembly has recognized the possibilities of such situations as are presented in this case. Section 10501-53, General Code, provides in part as follows:
“Except as hereinafter provided, the Probate Court shall have jurisdiction:
í i # # #
“3. To direct and control the conduct, and settle the accounts of executors and administrators, and order the distribution of estates:
< É # * *
“13. To direct and control the conduct of fiduciaries and settle their accounts.
“Such jurisdiction shall be exclusive in the Probate Court unless otherwise provided by law.
*491 “The Probate Court shall have plenary power at law and in equity fully to dispose of any matter properly before the court, unless the power is expressly otherwise limited or denied by statute.”
This case presents a much broader question than the ultimate amount which the widow is entitled to receive by reason of her election to take under the statute of descent and distribution. - The portion of the estate to which she is entitled cannot be determined unless and until the Probate Court shall have complied with the provisions of the Internal Revenue Act levying the federal estate tax. Prior to the establishment of the “marital deduction,” the Internal Revenue Act made no differentiation based on the relationship of a beneficiary, but by virtue of the statutes under which the federal estate tax is now levied the liability for the tax based on the portion of the property of a deceased spouse which by inheritance or otherwise passes to the surviving spouse, within the limitations therein prescribed, is postponed; thus there being recognized for tax purposes some degree of joint ownership in the property of the deceased. It would certainly seem to follow that, in the absence of express statutory authority denying the right, a surviving spouse is entitled to acquire all the rights of deferment of the tax expressly conferred by the federal estate tax law. The policy of this state evidenced by the statute of descent and distribution and cognate statutory provisions is to safeguard the interests of the surviving spouse.
The application of fundamental principles of equity in the situation here presented would be in accordance with the established legislative policy.
The Y. M. C. A. case, supra, is in accord with the general rule as disclosed by the weight of authority throughout the United States but it should again be emphasized that in the instant case no question of *492 testamentary distribution of estates is involved. The estate passing to the widow is nontestamentary and the decision herein is thus limited. This is so for the reason that in each instance where the disposition of ■property is by will the duty devolves upon the court to ascertain from the instrument itself, if possible, the intent of the testator as to the burden of the federal estate taxes.
The Internal Revenue Act contemplates that federal estate taxes be levied on property which under its provisions constitute part of a gross estate of a decedent but over which the executors or administrators have no authority, such as trust property subject to the power of appointment by someone other than the decedent (Section 811 [¶] [2], Title 26, U. S. Code) and the proceeds of insurance on the life of the decedent payable to beneficiaries (Section 811 [g], Title 26). In such instances the executor or administrator is authorized to require contribution from such recipients to the- extent of the federal estate tax assessed by reason of such property, excepting however where the property in question forms part of a “marital deduction.” Thus it must be noted that under the provisions of the federal estate tax law itself, some apportionment is authorized.
However, the instances referred to are not the only ones where the federal estate tax is assessed on property which does not constitute part of the estate in the hands of the executor or administrator. Another example appears in the case of Industrial Trust Co. v. Budlong (R. I., November 10, 1950), 76 A. (2d), 600. In that case certain inter vivos trusts created by the testator were held to constitute part of the gross estate for the assessment of the federal estate tax. Likewise, however, such trust estates were not part of the decedent’s estate in the hands of his personal representatives. The question presented there was *493 whether the estate might recover from the beneficiaries of the inter vivos trusts that part of the federal estate tax which resulted from the inclusion thereof in the gross estate.
The court held that in the absence of any clearly expressed intent in the will to the contrary such federal taxes should be borne by the trusts and not the residuary estate.
That holding, in our opinion, discloses a proper application of equitable principles for the purpose of preventing injustice to some heirs and unjustified windfalls to others. The rule suggested by the cases cited, and the cases referred to therein, may be summarized as follows: In the absence of a testamentary direction to the contrary the federal estate tax on all the property within the testamentary estate will be paid from the residue while all nontestamentary interests will bear only the burden of estate taxes attributed to them. (See discussion of the Industrial Trust Co. case in 31 Boston University Law Review, 233.)

It should be borne in mind that in the instant case the estate which the ividow takes passes to her not by the will but as a result of her election not to take under the will. By reason of such election she takes under the statute of descent and distribution and, therefore, the provisions of the will are entirely immaterial in the determination of her rights.

The executors argue that since Ohio has not adopted a statute providing for the apportionment of federal estate taxes, the Probate Court has no authority to do so. It should be observed that the apportionment statutes adopted by various states usually extend their operation to the division of the federal estate tax not only between those who take by intestate succession but between specific legatees and the general residuary legatees. Such statutes are contrary to the implica *494 tion that federal estate taxes are to be paid by the residuary estate resulting from the failure of the testator to direct a division of the estate taxes. The power to make apportionment in such cases has been exercised by the courts before the adoption of apportionment statutes. See Gaede, Exr. and Trustee, v. Carroll, 114 N. J. Eq., 524, 169 A., 172. However the absence of such a statute in Ohio does not deprive the Probate Court of authority to make such apportion-, ment as to intestate estates.
A recent case particularly in point is Lincoln Bank & Trust Co. v. Huber (Ken., May 29, 1951), 240 S. W. (2d), 89. The facts in that case were similar to those involved in the instant case. That was an action for a declaratory judgment to determine a question of taxation. The plaintiff’s husband died testate and she renounced the provisions of the will and instituted the action to recover from the executor her statutory one-half interest in the surplus personalty left by the decedent without any reduction by reason of an apportionment of federal estate taxes based upon the decedent’s taxable estate. She also sought the benefit of the “marital deduction,” provided for in the Internal Revenue Act. The court held that she took her share of the decedent’s estate free from the burden of federal taxes for the reason that the apparent purpose of the enactment of the “marital deduction” was to equalize the estate tax in non-community-property states with that in community-property states and to prepare the way for the elimination from the tax burden all those whose legacies or allotments do not create or add to the tax; and that, if the marital allotr ment is a deductible item before arriving at the net •taxable estate and does not add to the tax, it cannot ',be burdened with any portion of the federal estate tax.
The court recognized the fact that it had in previous cases applied a rule of equitable apportionment and *495 the decision follows the well established rule in Kentucky. That case is also authority for the recognition of the common-law rule that courts may make such apportionments in the exercise of their equity powers.
In the instant case the executors required the widow to pay out of her portion of the estate approximately $148,000 as her claimed share of the federal estate tax despite the fact that the assets comprising her portion of the estate were not subject to the tax. This computation had the effect not only of reducing the amount of the federal estate tax which would have been chargeable to the shares taken by the children under the will, but such method also resulted in increasing the total amount of the federal tax chargeable against the gross estate by approximately $50,000 above the amount which would have been assessed if the widow’s intestate share of one-third as a “marital deduction” bore no part of the federal estate tax. That fact alone discloses that the computation made in the instant case was inequitable and was not in accord with the clearly expressed plan and purpose of the provisions of the Internal Revenue Act.
It is our conclusion that, under the provisions of Section 10503-4, General Code, the widow upon her election became entitled to a one-third interest “to any personal property, or to any real estate or inheritance in this state, * * * except as otherwise provided by law”; that the provisions of Sections 10509-121, 10509-181 and 10509-182, General Code, contain no requirement that such widow pay from her share of the estate any federal taxes not directly assessed by reason of her inheritance; and that the Probate Court, in the exercise of its equity power conferred upon the court by Section 10501-53, General Code, in the distribution of intestate property should award such widow her statutory share of such estate with only such deduction of federal estate taxes which di *496 rectly result from the passing of her portion of the estate.
In this case the widow being entitled to one-third of the decedent’s estate will receive less than the maximum marital deduction authorized by the Internal Revenue Act and, therefore, no federal estate tax is deductible from her portion of the estate.
The judgment of the Court of Appeals is reversed and the cause remanded to the Probate Court for further proceedings in accordance with this opinion.

Judgment reversed.

Weygandt, C. J., Stewart, Middleton and Hart, JJ., concur.