43 N.J. Super. 534 (1957)
129 A.2d 321
IN THE MATTER OF THE ESTATE OF CORA TIMKEN BURNETT, DECEASED.
Superior Court of New Jersey, Chancery Division.
Decided February 8, 1957.
*535 Mr. Donald H. McLean, attorney for plaintiff executors.
Messrs. Riker, Emery & Danzig, attorneys for defendants Timken, et als.
Messrs. Wharton, Stewart & Davis, attorneys for defendant Cleveland Trust Company.
GRIMSHAW, J.S.C.
The court is asked to construe the Fifth paragraph of the last will and testament of Cora Timken Burnett, who died a resident of Bergen County on January 7, 1956. The precise question for determination is whether or not the inter vivos trust shall contribute its proportionate share of the estate taxes payable as a result of Mrs. Burnett's death.
On July 14, 1920 the testatrix, then Cora Timken, created an irrevocable trust, under the terms of which she reserved to herself for life the net income arising therefrom. She also reserved to herself the power to appoint by will the beneficiaries who were to receive the trust estate after her death.
On June 18, 1943, Mrs. Burnett executed her last will and testament, and on the same day executed a codicil thereto. In the will, in addition to providing for specific bequests and disposing of the residue of her estate, the testatrix included the following provision:
"FIFTH: I direct that all inheritance, legacy, succession or similar duties or taxes which shall become payable in respect to any property or interest passing under my Will, or any codicil which I may hereafter execute, shall be paid out of the capital of my residuary estate, consisting of stocks, bonds and uninvested money.
I was the Donor on July 14, 1920, of a trust fund with the Cleveland Trust Company of Cleveland, Ohio, as trustee, reserving the income for myself during my life, and reserving the right `to dispose of the whole or any part of the principal of the trust estate by a Last Will and Testament.' I now exercise that right of disposition of said trust fund, and direct the Cleveland Trust Company to pay the income of the said trust fund, quarter-annually, to my husband, JOHN CLAWSON BURNETT, if he shall survive me, and upon his death I direct the Cleveland Trust Company of Cleveland. Ohio to deliver and pay over the securities and cash constituting the principal of the said trust to THE TIMKEN FOUNDATION *536 of Canton, Ohio, a non-profit corporation, organized on December 28, 1934, under the laws of the State of Ohio, operated exclusively for charitable purposes. In the event that my said husband JOHN CLAWSON BURNETT shall not survive me, or if we die by common disaster, I direct the said Cleveland Trust Company to deliver and pay over the said securities and cash constituting the principal of said trust and any accrued income to said THE TIMKEN FOUNDATION."
In the codicil, further specific bequests were made. The total amount of the bequests and devises contained in the will and codicil was in excess of $1,300,000.
On June 18, 1943, when the will was executed, the inter vivos trust had a value of $10,539,000. Mrs. Burnett's personal estate was valued at $6,009,100. Had she died at that time the estimated taxes would have been between $7,640,000 and $8,232,300. On the date of Mrs. Burnett's death the trust estate had a value of $16,411,500, and the balance of her estate had a value of $7,275,700. The taxes on the above amounts have been estimated at a sum somewhere between $8,328,000 and $9,135,000.
"It is elementary principle in the construction of wills that the controlling consideration is the effect of the words as actually written rather than the actual intention of the testator independently of the written words. The question is not what the testator actually intended, or what he was minded to say, but rather the meaning of the terms chosen to state the testamentary purpose; and all the rules of construction and permissible extrinsic evidence are in aid of the fulfillment of the intention reasonably comprehended in the words, and are governed accordingly; their operative force is confined by the basic statutory requirement that a testamentary disposition be in writing and attested by witnesses. Griscom v. Evens, cited supra [40 N.J.L. 402 (Sup. Ct. 1878)]; Paul v. Paul, 99 N.J. Eq. 498 (Ch. 1926). Yet the words are to be assessed in the light of the surrounding facts and circumstances; and extrinsic evidence is admissible in nature and degree sufficient to place the judicial interpretive authority in the place of the testator at the time of the making of the will, the better to discover the true sense of the words, and to uncover and resolve ambiguity, but not to import into the will an intention alien to the expression. Dahmer v. Wensler, 350 Ill. 23, 182 N.E. 799, 94 A.L.R. 1 (Sup. Ct. 1932)."
In re Armour's Estate, 11 N.J. 257, 271 (1953).
*537 When she executed her will Mrs. Burnett was attended by legal advisors and accountants of the first rank. She was undoubtedly aware of the legal and tax consequences of the testamentary provisions which she was about to make. The phraseology of the will was unquestionably deliberate and meaningful.
To repeat, the provision in the Fifth paragraph of the will, having reference to taxes, is as follows:
"I direct that all inheritance, legacy, succession or similar duties or taxes which shall become payable in respect to any property or interest passing under my Will, or any codicil which I may hereafter execute, shall be paid out of the capital of my residuary estate, consisting of stocks, bonds and uninvested money."
Estate taxes are not among those which were to be paid. The distinction between estate and inheritance taxes is clear.
"There is a well defined distinction between an estate tax and a legacy or succession tax. `The right of privilege tax can, perhaps, be regarded either as the right or privilege of the owner of property to transmit it on his death, by will or descent, to certain persons, or as the right or privilege of these persons to receive the property.' Minot v. Winthrop, 162 Mass. 113, 38 N.E. 512, 516, 26 L.R.A. 259. See, also, United States v. Perkins, 163 U.S. 625, 16 S.Ct. 1073, 41 L.Ed. 287. But as pointed out in Hanson's Death Duties, p. 63, the federal death duty is levied not upon `the interest to which some person succeeds on a death, but the interest which ceased by reason of the death.' And while an inheritance tax is not `one on property, but one on the succession,' the property is chargeable with the tax, and `is called a succession.' Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 750, 44 L.Ed. 969; Hanson's Death Duties, p. 40."
Turner v. Cole, 118 N.J. Eq. 497, 500 (E. & A. 1935).
Since the testatrix failed to require payment of the estate taxes from the residuary estate, it must be concluded that she intended that the executors, upon payment of the estate taxes, would seek contribution from the beneficiaries of the trust in accordance with the provisions of federal law.
Again, the quoted portion of the Fifth paragraph of the will imposes on the residue of the estate the taxes on property "passing under my Will." The trust estate did not *538 pass under the provisions of the will but rather under the provisions of the trust agreement. McCook v. Mumby, 64 N.J. Eq. 394 (Ch. 1903); Fidelity Union Trust Co. v. Suydam, 125 N.J. Eq. 458 (Ch. 1939). Hence the provision for the payment of taxes would have no application to those portions of such taxes as were generated by the inter vivos trust.
The taxes upon the entire taxable estate, if required to be paid out of the property passing under the will, would entirely wipe out the residuary estate. It is absurd to suppose that if Mrs. Burnett had intended that all of the taxes would be paid from her personal estate she would have made the specific bequests contained in the will and codicil.
In my opinion, there should be a contribution by the inter vivos trust, to the executors, of that portion of the federal estate tax which the net taxable value of the inter vivos trust bears to the net taxable value of the entire estate.
Judgment accordingly.