50 N.J. Super. 482 (1958)
142 A.2d 695
IN THE MATTER OF THE ESTATE OF CORA TIMKEN BURNETT, DECEASED.
Superior Court of New Jersey, Bergen County Court, Probate Division.
Decided May 29, 1958.
*483 Mr. Donald H. McLean, attorney for plaintiffs.
Messrs. Wharton, Stewart & Davis, attorneys for defendant Dr. John Clawson Burnett (Mr. T. Girard Wharton and Mr. William T. Stewart, Jr., of counsel).
Messrs. Morrison, Lloyd & Griggs, attorneys for defendants (Mr. John W. Griggs, of counsel).
Mr. Gerald E. Monaghan, guardian ad litem for infant defendants.
GALANTI, J.C.C. (temporarily assigned).
Cora Timken Burnett died on January 7, 1956, a resident of Alpine, Bergen County, New Jersey, leaving a last will and testament and codicil thereto, both dated June 18, 1943. The decedent and the defendant, John Clawson Burnett, were married on July 15, 1920, and lived together as husband and wife for more than 35 years prior to her death. By her *484 will Mrs. Burnett, a wealthy woman in her own right, left her husband a substantial portion of her probate estate. Under item Second of the will and item Fourth of the codicil he received more than $70,000 in tangible personal property, including jewelry, furs and valuable works of art. As contingent beneficiary of the 13 specific legacies contained in the item First of the codicil, he received cash legacies in the amount of $14,000 as a result of the prior death of five of the legatees named in that item.
In addition, by items Third and Fourth of the will Mrs. Burnett gave and devised to her husband real property in Bergen County, New Jersey, valued at more than $1,600,000.
Items Fifth and Sixth of the will read as follows:
"Fifth: I direct that all inheritance, legacy, succession or similar duties or taxes which shall become payable in respect to any property or interest passing under my Will, or any codicil which I may hereafter execute, shall be paid out of the capital of my residuary estate, consisting of stocks, bonds and uninvested money.
I was the Donor on July 14, 1920, of a trust fund with the Cleveland Trust Company of Cleveland, Ohio, as trustee, reserving the income for myself during my life, and reserving the right `to dispose of the whole or any part of the principal of the trust estate by a Last Will and Testament.' I now exercise that right of disposition of said trust fund, and direct the Cleveland Trust Company to pay the income of the said trust fund, quarter-annually, to my husband, John Clawson Burnett, if he shall survive me, and upon his death I direct the Cleveland Trust Company of Cleveland, Ohio, to deliver and pay over the securities and cash constituting the principal of the said trust to The Timken Foundation of Canton, Ohio, a non-profit corporation, organized on December 28, 1934, under the laws of the State of Ohio, operated exclusively for charitable purposes. In the event that my said husband, John Clawson Burnett shall not survive me, or if we die by common disaster, I direct the said Cleveland Trust Company to deliver and pay over the said securities and cash constituting the principal of said trust and any accrued income to said The Timken Foundation.
Sixth: I give, devise and bequeath all the remainder of my estate, real and personal, as follows:
(a) One-half part thereof to my husband, John Clawson Burnett, and in the event that my husband, John Clawson Burnett, shall predecease me, I direct that one-fourth of said one-half part be placed in the trust hereinafter created for my brother, William Robert Timken, and his daughter, Valerie Timken Whitney, and three-fourths of said one-half part be placed in the trust hereinafter created for *485 my brother, Henry H. Timken's sons, Henry H. Timken, Jr., William Robert Timken and John M. Timken. In the event that my husband, John Clawson Burnett, and myself die by common disaster, his said one-half part shall be distributed according to his Will.
(b) One-eighth part thereof to my Executors and Trustees hereinafter named, In Trust Nevertheless, to pay the net income to my brother, William Robert Timken, in quarter-annually payments as long as he shall live and then to his daughter, Valerie Timken Whitney, until the termination of fifteen (15) years after my death when the trust shall end and the principal vest in and be turned over to the said Valerie Timken Whitney. If neither William Robert Timken, my brother, or Valerie Timken Whitney, my niece, shall be living at the termination of Fifteen (15) years after my death, the trust shall end and the principal shall be paid to her lawful issue and if there be no such issue living, the principal shall be divided equally between my nephews, Henry H. Timken, Jr., William Robert Timken and John M. Timken, sons of Henry H. Timken, my deceased brother, and if any of my said nephews is not living at that time, his lawful issue shall take his portion, and if there is no lawful issue, the said portion shall be divided equally among the remaining nephews.
(c) Three-eights part thereof to my Executors and Trustees hereinafter named, In Trust Nevertheless, to pay the income in quarter annual payments. In equal parts, to Henry H. Timken, Jr., William Robert Timken and John M. Timken, sons of my deceased brother, Henry H. Timken, until the termination of Fifteen (15) years after my death when the trust shall end and the principal shall be vested in and be turned over in equal parts to said Henry H. Timken, Jr., William Robert Timken and John M. Timken. In the event any of my said nephews is not living at the expiration of said Fifteen (15) years, the portion of the trust fund which would be distributed to any such deceased nephew, if living, shall immediately vest in and be distributed to his lawful issue then living, per stirpes and not per capita, and in the absence of such issue, the portion which such nephew would receive, if living, to the said nephew's wife if she survives such nephew, but if there is neither issue nor surviving wife, then the said portion shall be distributed in equal shares to any other nephews and to their lawful issue per stirpes and not per capita. In the event that one or more of my said nephews dies before the termination of the trust, any income which would otherwise be paid to such nephew or nephews until the termination of the trust shall thereafter be paid to his or their lawful issue per stirpes and not per capita, and if there is no lawful issue, be paid to the said nephew's wife if she survives such nephew, but if there is neither such issue nor surviving wife, then the income shall be paid in equal shares to my other nephews and to their lawful issue per stirpes and not per capita. In the event that there shall be no one living to take under this trust at the expiration of Fifteen (15) years, the trust shall end and the principal shall be paid to The Timken Foundation of Canton, Ohio."
*486 Item Seventh of the will is a spendthrift clause applicable to the beneficiaries of any of the trusts.
Items Eighth, Ninth and Tenth of the will are concerned with administrative and investment provisions and item Eleventh is concerned with alternative dispositions of certain legacies, in the event the decedent's husband pre-deceased her.
Item Twelfth of the will gives the testatrix' husband, Dr. Burnett, "All the rest, residue and remainder of my estate, * * * together with any property that may revert to my estate because of the failure of any of the trusts or gifts contained herein * * *"
The codicil, also dated June 18, 1943, provides for certain general and specific legacies to friends, employees and the Metropolitan Museum of Art and the San Diego Museum.
On the date of the death of the decedent her probate estate was valued at some $6,640,694.77. The inter vivos trust was valued at approximately $16,400,000.
The question to be determined in this proceeding is whether Dr. Burnett's share of the residuary estate under Item Sixth of the will is to contribute to the payment of federal estate taxes to be assessed against the probate estate of the decedent. The accountants and Dr. Burnett have contended that Dr. Burnett is to receive one-half of the residuary estate before deduction of federal estate taxes, and that the estate taxes are to be paid solely from the corpus of the trusts created therein. The guardian ad litem, on behalf of the infant beneficiaries of said trust, and the adult beneficiaries of said trust contend, on the other hand, that the whole of the residuary estate of the decedent is to be made available for the payment of federal estate taxes prior to the division thereof, one-half to the husband and one-half to the trusts.
It has been determined in a prior proceeding with regard to Mrs. Burnett's will that item Fifth of the will does not specifically direct that federal estate taxes are to be paid from the residuary estate. In re Burnett's Estate, 43 N.J. Super. 534 (Ch. Div. 1957). Grimshaw, J.S.C., in his opinion with regard to liability of the inter vivos trust for *487 payment of its share of federal estate taxes, interpreted item Fifth of the will. The significant portion of the opinion is as follows:
"When she executed her will Mrs. Burnett was attended by legal advisors and accountants of the first rank. She was undoubtedly aware of the legal and tax consequences of the testamentary provisions which she was about to make. The phraseology of the will was unquestionably deliberate and meaningful.
To repeat, the provision in the Fifth paragraph of the will, having reference to taxes, is as follows:
`I direct that all inheritance, legacy, succession or similar duties or taxes which shall become payable in respect to any property or interest passing under my Will, or any codicil which I may hereafter execute, shall be paid out of the capital of my residuary estate, consisting of stocks, bonds and uninvested money.'
Estate taxes are not among those which were to be paid. The distinction between estate and inheritance taxes is clear." (43 N.J. Super. at page 537)
In the absence of a specific direction by the decedent, what assets of the estate are to be burdened with the payment?
N.J.S. 3A:25-30 et seq. applies only to estates of persons dying testate on or after January 1, 1951, where their wills have been executed or republished after such date.
It is clear that the New Jersey apportionment statute is not applicable to these proceedings and, moreover, that statute deals only with the apportionment of the estate tax as between a fiduciary and a transferee of non-probate assets and does not guide the apportionment of the estate tax among beneficiaries. The act reads as follows:
"Whenever a fiduciary has paid or may be required to pay an estate tax under any law of the state of New Jersey or of the United States upon or with respect to any property required to be included in the gross tax estate of a decedent under the provisions of any such law, hereinafter called `the tax', the amount of the tax, except in a case where a testator otherwise directs in his will, and except to the extent where by any instrument other than a will, hereinafter called a `nontestamentary instrument,' a direction is given for apportionment within the fund of taxes assessed upon the specific fund dealt with in such nontestamentary instrument, shall be apportioned among the fiduciary and each of the transferees interested in the gross tax estate whether residents or nonresidents of the state, in accordance with the rules of apportionment herein stated, and the *488 transferees shall each contribute to the tax the amounts apportioned against them. Nothing in this article shall be taken to require an apportion of an estate tax inter sese among the legatees, devisees and beneficiaries under a will or among those who take as the next of kin and heirs at law of a person dying intestate, or against the interest of any surviving spouse in any real property which was held by the spouse and the decedent as tenants by the entirety." (N.J.S. 3A:25-31) (Emphasis mine.)
In view of the lack of specific direction by the decedent (see In re Burnett's Estate, supra) and the inapplicability of the New Jersey apportionment statute, these taxes are to be paid from the residuary estate. In Case v. Roebling, 42 N.J. Super. 545 (Ch. Div. 1956), it was stated:
"The legal incidence of the federal estate tax is upon the entire estate and, prior to the adoption of a state apportionment statute in 1950, the rule in New Jersey had long been that, in the absence of testamentary provision to the contrary, the ultimate burden of the Federal estate tax fell upon the residuary estate." (42 N.J. Super. at page 559.)
The leading New Jersey case, the one most cited for this proposition, is Turner v. Cole, 118 N.J. Eq. 497, 500 (E. & A. 1935):
"The federal estate tax falls upon the residuary estate, while the state transfer tax is assessed against the inheritance, and chargeable against the recipient."
Also see Morristown Trust Co. v. McCann, 19 N.J. 568, 573 (1955); Gaede v. Carroll, 114 N.J. Eq. 524 (E. & A. 1933); Bankers Trust Co. v. Hess, 2 N.J. Super. 308 (Ch. Div. 1949); Fidelity Union Trust Co. v. Suydam, 125 N.J. Eq. 458 (Ch. 1939).
The question is whether the residuary estate is to receive the full benefit of the marital deduction, thus giving a one-half share thereof to Dr. Burnett before the payment of federal estate taxes, or whether the federal taxes on the probate estate are to be deducted from the residuary estate prior to the division thereof called for in item Sixth of the will.
*489 The question of allocation of the burden of federal estate taxes had been left to the states. The federal tax authorities are bound by a determination made in accordance with applicable state law. Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106 (1942); Gallagher v. Smith, 223 F.2d 218 (3 Cir. 1955); Rogan v. Taylor, 136 F.2d 598 (9 Cir. 1943); Turner v. Cole, supra; Montclair Trust Co. v. Spadone, 139 N.J. Eq. 7 (Ch. 1946). Subsequent to the 1948 adoption of the marital deduction provisions by the Federal Government, it has been held in New Jersey that the allocation of the burden of federal estate taxes still remains to be determined in accordance with state law. Bankers Trust Co. v. Hess, supra.
There have been only two New Jersey decisions which have involved the marital deduction question, In re Gardner's Estate, 35 N.J. Super. 163 (App. Div. 1955); Case v. Roebling, supra, and the decisions, while they aid the court in its opinion, are not dispositive of the question because of the different expressed provisions contained in the wills.
It is fundamental that where the testamentary purpose is clearly expressed there is no room for judicial construction. As stated by Justice Heher in the case of Ricardo v. Kelly, 134 N.J.L. 540 at pages 543, 544 (Sup. Ct. 1946):
"The judicial interpretative function is to find the meaning of the testator's expression; and if the testamentary purpose is revealed by terms that are clear and unequivocable, viewed in the light of the surrounding circumstances, there is no room for construction in its general connotation. In re Fisler's Estate, 133 N.J. Eq. 421. The spirit prevails over the letter of the testament. All principles and rules in aid of interpretation yield to the intention exposed by the context. The words are to be given their primary and natural significance unless the context makes it clear that they were employed in a different sense. The prima facie meaning of the terms cannot be rejected in favor of a larger construction without an explicit indication of such a purpose. National State Bank of Newark v. Stewart, 135 N.J. Eq. 603. Conjecture and speculation as to the testamentary intention are inadmissible. The State of Wills (R.S. 3:2-3) directs that, except as to nuncupative wills, the testamentary design shall be in writing and authenticated as therein prescribed: and thus the testator's intention, to be enforceable, must be found in the words of the will, considered as a whole in relation to the attendant circumstances. The aim of construction is not to find the *490 unexpressed intention of the testator, but that expressed in the language of the will. The judicial function is not to redraft or revise the will, but only to construe the will that the testator has made. German Pioneer Verein v. Meyer, 70 N.J. Eq. 192; McGill v. Trust Company of New Jersey, 94 N.J. Eq. 657; affirmed 96 N.J. Eq. 331; Vide Maxwell v. Maxwell, 122 N.J. Eq. 247; First National Bank of Toms River v. Levy, 123 N.J. Eq. 21; March v. Norristown Penn Trust Co., 123 N.J. Eq. 282; Summit Trust Co. v. McAuley Water Street Mission, 125 N.J. Eq. 505."
Also see Ferguson v. Rippel, 19 N.J. Super. 424 (Ch. Div. 1952), affirmed 23 N.J. Super. 132 (App. Div. 1953).
The Court of Errors and Appeals, in the case of Turner v. Cole, 118 N.J. Eq. 497 (1935), said (at p. 500):
"The federal estate tax falls upon the residuary estate, while the state transfer tax is assessed against the inheritance, and is chargeable against the recipient. Although this court did not pass upon the question when the case came before it, we concur in the view expressed by the Vice-Ordinary Backes in the Roebling Case [In re Roebling's Estate]. 89 N.J. Eq. 163; appeal dismissed, 91 N.J. Eq. 72, that `there is no apportionment' of the federal estate tax `among the various transferees.' and that `the real estate, devised or descending,' is not liable to contribution. The federal death duty is significantly denominated an `estate tax.' It is not a property tax; it is a tax `imposed upon the transfer of the net estate' of the decedent. 26 U.S.C.A. § 1092. It is not an inheritance tax. It is calculated on the net estate, and not on the legacies or distributive shares."
A history of the genesis and nature of the marital deduction may be summarized as follows:
The marital deduction was added to section 812 of the Internal Revenue Code of 1939 by section 361(a) of the Revenue Act of 1948, 62 Stat. 117 (1948), 26 U.S.C.A. § 812. It came into being as part of a general revision of the federal income, gift and estate tax laws designed to eliminate a serious inequality in taxation between husbands and wives in community property states as contrasted with husbands and wives in noncommunity property or common law states. To understand the legislation, this problem must be briefly discussed. See Lowndes & Kramer, Federal Estate and Gift Taxes, 371-373 (1956).
*491 In general, in community property states, only 50% of the property and earnings of the husband are, as a matter of local law, deemed to belong to the husband, while the remaining half is that of his wife. As a result, prior to 1948, substantial differences in the treatment of taxpayers in identical economic circumstances arose by reason of their residence in community property rather than common law states. This distinction was particularly significant in the field of income taxation. To illustrate, a husband living in California could split a $10,000 income between himself and his wife, thus paying two taxes on separate incomes of $5,000, whereas a husband with the same income in New Jersey was compelled to pay one tax on an income of $10,000.
With the increasingly steep graduation of income tax rates in the 1930's and '40's the advantages taxwise of community property living increased to the point where several common law states, including Oklahoma, Oregon, Michigan, Nebraska and Pennsylvania (where the legislation was declared unconstitutional), forsook the common law for community property laws. H.R. Rep. No. 1274, 80th Cong., 2d Sess. 23 (1948). While the advantages of splitting income during life were most significant dollar-wise because of the decreased burden of income taxes, the community property laws also produced estate and gift tax savings, particularly by splitting the estate of the husband upon death. As to this last matter, a $1,000,000 estate left entirely to one's spouse would generally produce a taxable estate of but $500,000 in a community property state on the theory that half of the property had always belonged to the decedent's husband or wife.
In 1942 Congress attempted to remedy this inequality in estate taxation by enacting section 811 (c) (2) of the Internal Revenue Code of 1939, which sought to tax community property states in roughly the same manner in which common law estates were taxed, i.e., by including all community property in the husband's estate where he died first. 56 Stat. 941 (1942). This solution proved inequitable in that, in many instances, community property estates were then *492 taxed more heavily than common law estates. 94 Cong. Rec. 921-922 (1948); see generally Paul, Federal Estate and Gift Taxation 72-82 (1946 Supp.).
Therefore, when Congress contemplated a general reform in 1948 directed principally to the equalization of income taxation between residents of community property and common law states, changes were also made in the gift and estate tax laws. The revamping of all these laws sought to grant to residents of common law states the same tax advantages accorded husbands and wifes in community property states. Thus section 301 of the Revenue Act of 1948 provided for the "Splitting of Income" between husband and wife in common law states, and section 303 instituted the now familiar joint federal income tax return. Secs. 2, 6013(a), Internal Revenue Code (1954); formerly Secs. 12(d), 51(b), Internal Revenue Code (1939); 62 Stat. 111, 115 (1948).
As for the matter of estate and gift taxation, the Senate Report on H.R. 4790, which became the Revenue Act of 1948, fully describes both the changes and philosophy lying behind them:

"B. Estate and Gift Taxes.
1. The 1942 amendments to the estate and gift taxes which provided special rules in the case of community property are repealed for persons dying and as to gifts made after the date of the enactment of this bill. Generally, this restores the rule by which estate-and gift-tax liabilities are dependent upon the ownership of the property under State law. Thus, in community-property States, irrespective of which spouse dies first, only one-half of the community property is included in the gross estate. Similarly, a gift made out of community property is taxable one-half to the husband and one-half to the wife, since under State law each owns a one-half interest in the property.
2. Provision is made for estate-and gift-tax `splitting' of noncommunity property. This provision also will apply to persons dying after the date of the enactment of this bill, so that community property and noncommunity property may be placed on an equal basis at the same time. Under this provision property passing outright in a common-law State from a decedent to the surviving spouse is deducted from the decedent's gross estate up to a limit of 50 percent of the value of the decedent's gross estate less deductions for funeral expenses, debts, and other claims against the estate. In a similar fashion husbands and wives, in common-law States, may treat their gifts as being made one-half by each spouse. Residents of community-property *493 States may also take advantage of the estate and gift-tax splitting provisions with respect to transfers of their separate property. The same splitting effect is achieved for community property by the repeal of the 1942 amendments." Sen. Rep. No. 1013, 80th Cong., 2d Sess. 5 (1948). (Italics supplied.)
With particular reference to the estate tax and the instant problem, this proposal, which eventually became law, "provides that if one-half of the estate of a husband is left to the wife, this portion of the estate will not be included in the estate tax base of the husband," as noted on the floor of the House by Representative Daniel A. Feed, ranking Republican on the House Ways and Means Committee. 94 Cong. Rec. 704; "Revenue Act of 1948," Legislative Reference Series 336 (1948). This decision to "split" an estate for tax purposes in common law states clearly reflects the Congressional understanding of community property as owned one-half by each spouse. As the above Senate Report states, the Congress believed that "under state (community property) law each owns a half-interest in the property." See in accord H.R. Rep. No. 1274, 80th Cong., 2d Sess. 4 (1948).
In Case v. Roebling, 42 N.J. Super. 545, 562, supra, Judge Schettino concluded his review of the legislative history of the marital deduction amendment as follows:
"Inherent in Congress' plan to equalize the estate tax as it applied to estates in common-law and community property states was the intent to give the same treatment and benefits to surviving spouses in both categories of states. Where a married resident dies in a community-property state, the surviving spouse is considered to own one-half of the entire community estate of the deceased spouse and this one-half share is not subject to the estate tax. In a common-law state, where a surviving spouse is entitled to a portion of the deceased spouse's estate, a share up to one-half of the estate received by the surviving spouse is not subject to the federal estate tax."
A particularly cogent and concise statement is found in the unanimous opinion of the federal Court of Appeals for the Fourth Circuit in Pitts v. Hamrick, 228 F.2d 487 at page 490 (1955). Judge Parker said:
"It is inconceivable here that any part of the estate tax should be attributed to the share of the widow, where the purpose of Congress *494 in allowing the marital deduction was to free the interest of the surviving spouse from the burden of that tax and where the estate receives the benefit of the deduction because of that interest." (Emphasis mine.)
In accord with these views are: California Trust Company v. Riddell, 136 F. Supp. 7, 9 (D.C.S.D. Cal. 1955); In re Fuchs' Estate, 60 So.2d 536 (Fla. Sup. Ct. 1952); Jerome v. Jerome, 139 Conn. 285, 93 A.2d 139 (Sup. Ct. Err. 1952); Lincoln Bank & Trust Co. v. Huber, 240 S.W.2d 89, 90-91 (Ky. Ct. App. 1951); In re Peters' Will, 204 Misc. 333, 88 N.Y.S.2d 142 (Surr. Ct. 1949), affirmed 275 App. Div. 950, 89 N.Y.S.2d 651 (App. Div. 1949); In re Elliott's Estate, 78 Pa. Dist. & Co. R. 406 (Orphans Ct. 1951), and In re Rosenfeld's Estate, 376 Pa. 42, 101 A.2d 684, 685 (Sup. Ct. 1954).
Moreover, it should be noted that while the New Jersey apportionment statute (N.J.S. 3A:25-33 et seq.) applies only to apportionment between probate and non-probate assets, nevertheless, one of its provisions specifically reserves to a surviving spouse the tax benefits accorded him by the federal statute:
"* * * (ii) any deduction allowed under the law imposing the tax by reason of the relationship of any person to the decedent or by reason of charitable purposes of the gift shall inure to the benefit of the fiduciary or transferee, as the case may be, * * *." N.J.S. 3A:25-33 et seq.
There is no clear New Jersey decision on this point, but before referring to decisions from other states, it may be helpful to first refer to a similar situation in New Jersey regarding the allocation of the burden of federal estate taxes. In Morristown Trust Co. v. Childs, 128 N.J. Eq. 524 (Ch. 1940), the court dealt with the responsibility of an inter vivos charitable trust for its proportionate share of federal estate taxes. The clear conclusion was that in spite of the fact that the estate was entitled to a deduction based upon the charitable gifts, these gifts were required to contribute to the burden of estate taxes. This point was disposed of in the opinion at page 536, where the court stated:
*495 "Both the United States Supreme Court and the courts of this State hold that the federal estate tax is a tax on the estate before distribution,  hence a tax on the corpus; and that in the absence of statutory or testamentary direction to the contrary, distribution is to be made pursuant to the testamentary (or trust deed) provisions without any exoneration of charitable distributees. Y.M.C.A. v. Davis, supra [264 U.S. 47, 44 S.Ct. 291, 68 L.Ed. 558] holds that the federal statute does not affect this rule; and there is no state statute affecting it. Neither is there, in the instant case, any such direction in the will or in the trust deed. Hence, the tax is payable out of corpus, and this diminishes the interest both of life tenants and remaindermen; and there is no right of the charitable remainderman to exoneration or reimbursement by the life tenants." (128 N.J. Eq. at page 536.)
Y.M.C.A. v. Davis, 264 U.S. 47, 44 S.Ct. 291, 68 L.Ed. 558 (1924), also concerned with the question of the obligation of charitable beneficiaries of the residuary estate to bear the burden of federal estate taxes, was relied on in Childs case. It holds, 264 U.S. at page 51, 44 S.Ct. at page 292:
"It was wholly within the power of the testatrix to exempt her altruistic gifts from payment of the tax by specific direction to her executor if she chose. It must be presumed, when she failed to exercise the power, that she intended the incidence of the tax to be where otherwise by law it must be, and therefore that it was her purpose that her residuary legatees were to receive all that was left after paying all charges, including this tax, out of her estate."
It is clear from the above cases that New Jersey has not decided that the mere fact that a residuary legatee's share qualifies for the marital deduction warrants the conclusion that it is not amenable to paying its proportionate share of the burden federal estate taxes impose on the residuary estate.
Turning next to out-of-state decisions, we find a split of authority. There are numerous foreign jurisdictions holding that, in the absence of a testamentary declaration to the contrary, the surviving spouse is not entitled to take his share of the residuary estate free of the burden of Federal estate taxes.
See Scoles, "Apportionment of Federal Estate Taxes and Conflict of Laws," 55 Col. L. Rev. 261 (1955), Wachovia *496 Bank and Trust Co. v. Green, 236 N.C. 654, 73 S.E.2d 879 (Sup. Ct. 1953), Campbell v. Lloyd, 162 Ohio St. 203, 122 N.E.2d 695 (Sup. Ct. 1954), certiorari denied 349 U.S. 948, 75 S.Ct. 870, 99 L.Ed. 1274 (1955); Thompson v. Wiseman, 233 F.2d 734 (10 Cir. 1956).
In In re Uihlein's Will, 264 Wis. 362, 59 N.W.2d 641, 38 A.L.R.2d 961 (Sup. Ct. 1953), the widow elected to take under the Wisconsin statute against the will and was consequently entitled to one-third of the personal estate. She contended that she was entitled to her one-third share prior to the deduction of federal estate taxes, which would then have been paid by the remaining beneficiaries. In requiring her to contribute proportionately the court stated:
"However, by following the construction contended for by counsel for the widow, the widow would stand to benefit by the clause of the will which provided for the payment of federal estate taxes out of the residue. If the widow had not renounced the will by her election she would have taken under the residuary clause after deduction of the federal estate tax, and she ought not be placed in a more advantageous position, in so far as the impact of such tax is concerned, by such election. In electing to take under the law she is not entitled to claim the benefit of the provision directing payment of federal estate taxes out of the residue. Such clause of the will remains effective as between the recipients of specific legacies and the remainderman who takes the residue, but the widow's renunciation of the will prevents such clause from being operative so as to relieve her share from the impact of the federal estate tax." (59 N.W.2d at page 649)
The conclusions pointed out by Judge Schettino's opinion may be spelled out in the language of Case v. Roebling, supra, where he said, 42 N.J. Super. at page 562:
"In a common-law State, where a surviving spouse is entitled to a portion of the deceased spouse's estate, a share up to one-half of the estate received by the surviving spouse is not subject to the federal estate tax."
Judge Schettino cited the Peters case, but while it involved the law of a foreign jurisdiction, it was one of the first decisions after the 1948 amendment to the Federal Code, and on page 563 of 42 N.J. Super. he says:
*497 "Its purpose is to allow a surviving spouse to take a certain portion of the estate free of Federal estate taxes. * * * Her share would qualify as a marital deduction and escape Federal estate taxes."
The effects of the marital deduction statute and of the two opposing positions in this case are illustrated by the following computations, based on the valuations used in the federal estate tax return filed by executors:

 1. 2. 3.
 Assuming Dr. Burnett Dr. Burnett
 no marital pays 1/2 of pays no part
 deduction federal of federal
 statute had estate tax estate tax
 been passed (DVTW: DG) (Exrs.: DJCB)
Federal
estate tax ........ $3,285,962 $1,402,279 $1,051,219
Net remainder
shares:
Dr. Burnett ....... 543,423 1,485,265 2,186,404
Trusts ............ 543,423 1,485,264 1,135,184
 __________ __________ __________
 $1,086,846 $2,970,529 $3,321,588

If the position of the defendants' is sustained, "the trusts would receive as much benefit from the marital deduction as Dr. Burnett himself, with the following consequences (see tables above): (a) Dr. Burnett and the trusts would each pay the same amount of federal estate tax, i.e., more than $700,000 each; (b) Dr. Burnett's share would be reduced by over $700,000; (c) the trusts' shares would be increased by over $350,000; and (d) increased taxes of over $350,000 would be payable to the Federal Government. Cf. Case v. Roebling, supra [42 N.J. Super] at page 566."
At page 567 of 42 N.J. Super. Judge Schettino continued:
"It has been pointed out that the marital deduction incidentally helps the other defendants, even under the executor's construction of the will. * * * If there had been no marital deduction, the dissident two main defendants each would have received $1,616,648.54, but as a result of the marital deductions each receives $1,842,043.14, an increase of about $226,000 each. Such benefits are not inconsequential."
*498 The decisions in foreign jurisdictions reflect the expressed will of either the legislature or the testator. In Wisconsin (In re Uihlein's Will, 264 Wis. 362, 59 N.W.2d 641 (Sup. Ct. 1953)), the widow claiming against the will was limited to one-third of the "net personal estate," statutory language which the court deemed "clear and unambiguous," and in Illinois (Northern Trust Co. v. Wilson, 344 Ill. App. 508, 101 N.E.2d 604 (App. Ct. 1951)) the court found a legislative mandate in a statute restricting the widow's forced share to one-third "after payment of all just claims." Similarly, the result in Thompson v. Wiseman, 233 F.2d 734 (10 Cir. 1956), was controlled by an Oklahoma statute directing payment of debts, etc., out of "property * * * devised or bequeathed to a residuary legatee." In the North Carolina case, Wachovia Bank & Trust Co. v. Green, 236 N.C. 654, 73 S.E.2d 879 (Sup. Ct. 1953), the court was confronted by the testator's direction that federal estate taxes be paid by the executor, a mandate held to bar the equitable arguments of the dissenting widow. Finally, Weinberg v. Safe Deposit & Trust Co. of Baltimore, 198 Md. 539, 85 A.2d 50, 37 A.L.R.2d 188 (Ct. App. 1951), was likewise controlled by a specific provision of the Maryland apportionment statute withholding its benefits from a dissenting spouse. The court concluded, "* * * we cannot substitute considerations of fairness and equity for definite legislative directions on matters entirely within legislative control."
The legislative history of the marital deduction statute indicates a fixed Congressional purpose to give surviving spouses in common law states the advantages otherwise accruing only to those favored by local community property laws. This can only be accomplished in this case by allowing Dr. Burnett the full benefit of the marital deduction, as the Congress intended. For, had Cora Timken Burnett died in a community property state, in the usual case, one-half of her substantial estate would have passed to Dr. Burnett wholly outside both her probate and taxable estate. Under her will, Dr. Burnett takes substantially less than one-half of his wife's estate, and the Congressional intent  to equalize *499 estate taxation between community property and common law states  can be effectuated in this case only by recognizing that Dr. Burnett's share is deductible for estate tax purposes and hence should bear no portion of the tax which is generated solely by the other shares of the estate.
The contrary contentions, which reduce the marital deduction by requiring Dr. Burnett to assume a part of a tax burden not attributable to or created by his share of the estate, leaves him with a much smaller net share of the estate left to him by will than he would have taken if this estate had been community property. Any doctrine which charges the deductible marital share of an estate with federal taxes thwarts the intent of Congress by destroying parity between common law and community property.
At page 566 of 42 N.J. Super., Judge Schettino continued:
"General and overall testamentary intent is to be found within the whole and the four corners of a will, including the dispositive and the tax clause provisions. Primary testamentary intent will be made manifest from such study. In drafting a will the testator  especially one of great wealth  is concerned with how few taxes can be levied against his estate, in what amounts and how taxes shall be paid. The tax burden must weigh heavily in any estate plan of distribution. Can any reasonable person conceive the situation in which this testator would want his estate burdened with increased taxes of about $1,300,000? I cannot." (Emphasis mine.)
At page 568 of 42 N.J. Super., Judge Schettino concluded after some further discussion:
"* * * Under the marital deduction statute the property which goes to the widow has no taxable valuation since it is not used in the determination of the amount of tax. The taxable value of the widow's share which contributes to the taxable base is none. In re Ginsberg's Estate, 4 Ill. App.2d 138, 123 N.E.2d 739 (App. Ct. 1955)."
The purpose of charitable deductions legislation was to induce people to give to charity and as a reward for such giving they received deductions by that amount of money. Marital deduction has nothing to do with that. It was not to induce husband and wife to give estates to each other. *500 It might help in that direction but that was not its purpose. The purpose was to correct the gross inequality which existed for all people in the community property states and common law states and attempted to put them on an equal basis. The Legislature has failed to provide for an apportionment of the taxes in the case sub judice. In the absence of a mandatory directive in a will, a surviving spouse's share of a residuary estate should not be required to contribute proportionately to the payment of federal estate taxes when such share qualifies for the marital deduction.
Submit judgment.