**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0707-18T4

MARLENE WITTER,

    Plaintiff-Appellant,

v.

THE LEAGUERS, INC., and
LEAGUERS HEADSTART,

    Defendants-Respondents,

and

CITY OF NEWARK,
COUNTY OF ESSEX, and
STATE OF NEW JERSEY,

    Defendants.

_____

Argued telephonically March 25, 2020 –
Decided June 5, 2020

Before Judges Koblitz, Whipple, and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-0074-17.

Greg D. Shaffer argued the cause for appellant (Brandon J. Broderick, LLC, attorneys; Alan K. Albert, of counsel and on the brief).

Paul J. Soderman argued the cause for respondents.

PER CURIAM

Plaintiff Marlene Witter appeals from an August 10, 2018 order granting summary judgment to defendants, The Leaguers, Inc., and Leaguers Head Start (Leaguers); a June 22, 2018 order denying a reopening and extension of discovery; and two September 28, 2018 orders—one denying permission to amend her complaint to name a new defendant, and the other denying reconsideration of the summary judgment order. We affirm.

On January 7, 2015, plaintiff slipped and fell on the stairs while picking up her daughter at Leaguers Head Start at its 750 Clinton Avenue location in Newark; plaintiff's daughter was enrolled in preschool there. Leaguers is a non-profit organization recognized by the Internal Revenue Service as a 501(c)(3) entity formed to provide educational services. Leaguers' website[1] indicates it is

---

[1] Plaintiff's appendix includes a page from Leaguers' website; the rest of the website pages are not included in either the plaintiff's or the defendants' appendices. However, to save time and promote judicial economy, where facts cannot be seriously disputed and are general or universally known, judicial notice may be taken. Estate of Kotsovska v. Liebman, 43 N.J. Super. 537, 549 (App. Div. 2013) (citing State v. Silva, 394 N.J. Super. 270, 275 (App. Div.

A-0707-18T4

a non-profit organization that provides services for three- to five-year-old children and their families in Newark, Irvington, Union Township, Roselle, and Elizabeth, with a mission "to enhance the quality of life for children and families through diverse educational and cultural programs that foster self-growth, personal development and pride in one's community," and that they have a strong belief in "Opportunity through Education."  http://leaguers.org/history/.

Leaguers operates Head Start Centers and provides educational, physical and mental health, nutrition, and parenting skills classes, housing referrals, leadership classes, and other services to community families.  Its website lists sixteen locations for Head Start preschool and Early Head Start programs. Leaguers also offers three rooms at the 405-425 University Avenue location in Newark that can be rented out for gatherings and events, although it notes that "[n]o kitchen facility is available."  http://leaguers.org/hall-rental-request/ .

In her deposition, plaintiff testified that on the day of the incident, when she turned to walk down the stairs from the second floor to the first, the stairs were "wet, full of ice," and she fell from the top of the stairs to the landing, sustaining injuries to her right shoulder.  She eventually got up with assistance,

---

2007)).  While not a part of the record, defendants' extensive educationally-oriented activities and purpose can be found on their website at http://leaguers.org/.

    A-0707-18T4

went down the rest of the stairs from the landing, and left without saying anything to anyone who worked at Leaguers or to the security guard, who was sitting at the desk at the front door. A week after the incident, plaintiff returned and asked that an incident report be prepared. An incident report form relating to the incident was signed by Michael Travis, the security guard on duty the day plaintiff fell, as well as by Hope DeLoach, the site supervisor.

On January 3, 2017, plaintiff filed suit against Leaguers as well as the City of Newark, County of Essex, and the State of New Jersey,[2] alleging that on or about January 7, 2015, she slipped and fell while lawfully on the premises at 750 Clinton Avenue in Newark, which was owned and under the control of defendants. Plaintiff alleged defendants "were the owners or were in control and operation of the premises" and "[a]t the same time, the [d]efendants, through arrangement, agreement, or acts or omission of [its] agent, servant, [or] employee, were responsible for the construction, remodeling, maintenance, repair, supervision or upkeep of the premises," and defendants "negligently and carelessly allowed a dangerous and hazardous condition to exist on the property or failed to warn of same which caused [p]laintiff to slip and fall." Plaintiff

---

[2] Defendants State of New Jersey and City of Newark were dismissed without opposition.

A-0707-18T4

asserted she sustained serious and permanent injuries, suffered great pain, shock, and mental anguish, was and still is incapacitated, and will be permanently disabled and has and will continue to expend substantial sums of money for her treatment.

In March 2017, Leaguers filed an answer asserting the defenses and limitations afforded by N.J.S.A. 2A:53A-6 and -7, under the Charitable Immunity Act. Leaguers responded to Form C Interrogatories naming Janet Ramos, Michael Travis, Hope DeLoach, and Salahuddin Raheem as persons with knowledge of any relevant facts relating to the case; stating there were photographs of the scene, which were attached; and indicating that, among other law, defendants would rely on the Charitable Immunity Act, N.J.S.A. 2A:53A-7 to -11.

In November 2017, plaintiff asked for a sixty-day extension of the January 2, 2018 discovery end date; the new discovery end date was March 3, 2018, by stipulation of the parties. On February 14, 2018, mandatory, non-binding arbitration was scheduled for April 17, 2018.

On February 28, 2018, plaintiff noticed depositions for March 12 for Travis, DeLoach, Ramos, and Raheem, and moved to extend discovery for sixty days to May 2. A March 16 order extended discovery to May 2, requiring

defendants' deposition be completed by March 30, plaintiff to serve her medical and liability expert reports by April 13, defendants to serve their liability expert reports by April 30, and any additional discovery to be completed by May 2. On April 30, plaintiff sent defense counsel notices to take the depositions on May 11 of Travis, DeLoach, Ramos, and Raheem.

On May 14, plaintiff deposed defendants DeLoach and Ramos. DeLoach, the site supervisor at 750 Clinton Avenue, testified that Travis was the security guard at the Clinton Avenue location on duty at the time of the incident in 2015, but that he was employed by "[a]n outsource company." DeLoach testified that as site supervisor, she had to know about all incidents at the site and that all incidents would be reported to her. She stated the security guards were there to sign people in and to tour the building to make sure everything was safe but would not be alerted about incidents involving children. She did not know the name of the company who employed the security guards but said human resources would know.

DeLoach testified that after the incident, she asked Travis to help plaintiff get up, which he did. She stated that while Travis was no longer working there, he did write his statement up the day of the incident and submitted it to DeLoach. DeLoach took photos of the front of the building, the vestibule, and the landing

6

where plaintiff stated she fell; plaintiff's counsel reviewed these photos at the deposition.

Janet Ramos, the Director of Human Resources, testified the signature on the incident report was Travis', that he was the security guard at the time of the incident, and he worked for a security company called Special OPS, hired to provide security services inside the building. If there were an emergency issue regarding the facility, a call would be made to the central offices and it would be directed to defendants' director of facilities.

When asked "[s]o you wouldn't expect the security guard to pay attention to any safety issues with regard to the facility," she responded "[n]o." When asked if there was a flood in the bathroom, would the security guard report it to maintenance, she responded "I mean, I don't . . . see him trying to do . . . such a job." When asked if she would expect him to report it, she answered "I mean, I would think he would probably say something. . . ." When asked if "any issues with regard to the safety of the front were visible, you would expect him to report that?" she responded "[s]ure."

However, when asked if there was a loose handrail and the security guard was going upstairs, Ramos said,

A-0707-18T4

If he was to notice something like that I would think he would say something to [DeLoach], but <u>that's not his job to do that, though</u> . . . .

. . . .

<u>His job is not to fix it and his job is really not to really report it.</u>  I mean, if he sees that, you know, something out of the ordinary, I would think he may say something, but site supervisor's jobs are to do a monthly – you know, they do a daily check on the building so they have a report that they fill out.

[(Emphasis added).]

On May 22, 2018, an arbitration award assigned eighty percent liability to Leaguers and twenty percent liability to plaintiff, for net damages of $16,000 for out of pocket medical expenses.  On May 24, plaintiff requested a trial de novo, which was scheduled for August 6.

However, on June 5, plaintiff requested additional information including the contact information for Travis or the security company who employed him. A day later, plaintiff moved to reopen and extend discovery for sixty days asserting the identity of Travis's employer, Special OPS, was "newly discovered evidence reveal[ing] a new [d]efendant who is potentially liable for plaintiff's injuries."  The court denied reopening and extension of discovery because "no exceptional circumstances are demonstrated," and on July 5 plaintiff moved for reconsideration.

A-0707-18T4

On July 6, 2018, Leaguers moved for summary judgment asserting plaintiff's negligence claim was barred by the Charitable Immunity Act. On August 1, 2018, plaintiff moved to amend her complaint to add Special OPS Security Services as a defendant.

After hearing argument, the court granted summary judgment for Leaguers, finding it is a nonprofit entity organized for the very educational purposes that occasioned plaintiff's presence on the property, and that even if plaintiff had been able to present a prima facie case of liability as to negligence, she could not recover based on her status as a beneficiary pursuant to the Charitable Immunity Act. The court rejected plaintiff's argument that a genuine issue of fact existed as to whether defendants fit the definition of a charitable organization for the purposes of the Charitable Immunity Act.

Plaintiff moved for reconsideration, arguing Leaguers' website advertised space for rent "in a manner akin to a catering hall." Plaintiff argued that while Leaguers were recognized as a valid 501(c)(3) entity, they "may have lost that status due to their non-educational activity of leasing space out to the public."

On September 28, 2018, the trial court denied plaintiff's motion to file an amended complaint to add defendant Special OPS Security Services, as the "[c]omplaint has been dismissed by way of summary judgment in favor of

[Leaguers] so no action currently pending no proposed pleading attached. Amendment futile as no showing of new party involvement." The same day, the court also denied plaintiff's motion for reconsideration.

This appeal followed.

## I.

On appeal, plaintiff argues the court erred in denying its motion to amend the complaint given the liberal standard for amending pleadings under Kernan v. One Washington Park Urban Renewal Associates, 154 N.J. 437 (1998), and Notte v. Merchants Mutual Insurance Co., 185 N.J. 490 (2006).

Our review of a motion to amend a pleading "is limited," as "[t]he determination of a motion to amend a pleading is generally left to the sound discretion of the trial court." Franklin Med. Assocs. v. Newark Pub. Schools, 362 N.J. Super. 494, 506 (App. Div. 2003) (citations omitted). Therefore, the trial court's "exercise of discretion will not be disturbed on appeal, unless it constitutes a 'clear abuse of discretion.'" Ibid. (quoting Salitan v. Magnus, 28 N.J. 20, 26 (1958)).

Although Rule 4:9-1 requires that motions for leave to amend should be liberally granted at any stage of the proceedings, "the granting of a motion to file an amended complaint always rests in the court's sound discretion" in light

10

of the facts that exist at the time each motion is made. Kernan, 154 N.J. at 456-57 (citations omitted). "Accordingly, the discretion to deny a motion to amend is not mistakenly exercised when it is clear that the amendment is so meritless that a motion to dismiss under R[ule] 4:6-2 would have to be granted, the so-called futility prong of the analysis." Pressler & Verniero, Current N.J. Court Rules, cmt. 2.2.1 on R. 4:9-1 (2019). When considering "the factual situation existing at the time each motion is made," a court is "free to refuse leave to amend when the newly asserted claim is not sustainable as a matter of law. In other words, there is no point to permitting the filing of an amended pleading when a subsequent motion to dismiss must be granted." Notte, 185 N.J. at 501-02 (citation omitted).

Plaintiff argues Special OPS employed Travis, a security guard, and that a security guard "may very well share in responsibility for ensuring the safety and security of the premises, such as reporting or keeping a lookout for water on the floor." Although plaintiff asserts that Ramos testified the security guard would be responsible for keeping an eye out on the premises for dangers on the floor, the record reflects otherwise.

On the contrary, Ramos, the director of human resources for Leaguers, testified Travis did not have a duty to report or correct issues regarding the

11

maintenance or condition of the building, as that was not within the scope of his work. Therefore, any claim against Special OPS would not survive a motion to dismiss and would be futile.

Accordingly, based on our review of the record, we conclude the trial court did not abuse its discretion in denying plaintiff's motion to amend the complaint to add Special OPS as a party.

## II.

We also reject plaintiff's argument the court erred in refusing to extend discovery. "We generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law." Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005).

Under Rule 4:24-1(c), "[n]o extension of the discovery period may be permitted after an arbitration or trial date is fixed, unless exceptional circumstances are shown." This "heightened standard of 'exceptional circumstances'" for any requests for discovery extensions after an arbitration or trial date is set is due to the "liberalized time for discovery afforded by the tracking system" that resulted from 2000 rule amendments known as "Best

A-0707-18T4

Practices." Szalontai v. Yazbo's Sports Café, 183 N.J. 386, 396-97 (2005) (quoting O'Donnell v. Ahmed, 363 N.J. Super. 44, 50 (Law Div. 2003)).

Because plaintiff moved to reopen and extend discovery after arbitration and after the trial date was set, she was required to show "exceptional circumstances." To extend discovery for "exceptional circumstances," the moving party must show:

> (1) why discovery has not been completed within time and counsel's diligence in pursuing discovery during that time; (2) the additional discovery or disclosure sought is essential; (3) an explanation for counsel's failure to request an extension of the time for discovery within the original time period; and (4) the circumstances presented were clearly beyond the control of the attorney and litigant seeking the extension of time.
>
> [Rivers, 378 N.J. Super. at 79 (citing Vitti v. Brown, 359 N.J. Super. 40, 51 (Law Div. 2003)).]

Where counsel requests additional time for discovery, they "should establish that he or she did make effective use of the time permitted under the rules." Ibid.

"A failure to pursue discovery promptly, within the time permitted, would normally be fatal to such a request." Ibid. (quoting Vitti, 359 N.J. Super. at 51). Where the "'delay rests squarely on plaintiff's counsel's failure to . . . pursue discovery in a timely manner,' and the Vitti factors are not present, there are no

exceptional circumstances to warrant an extension." Ibid. (quoting Huszar v. Greate Bay Hotel & Casino, Inc., 375 N.J. Super. 463, 473-74 (App. Div. 2005)).

Plaintiff's counsel argues they showed exceptional circumstances in that their attempts to depose Travis, DeLoach, Ramos, and Raheem were consistently thwarted by defense counsel. They assert that when defendants' representatives were finally produced, it was only then that plaintiff "further learned [d]efendants would expect [] Travis to immediately report any dangers such as the one that [p]laintiff alleges caused her injuries," and that this was a "newly discovered" piece of evidence revealing a new defendant who was potentially liable.

The record does not support plaintiff's counsel's arguments that deposing defendants' representatives so late was out of their control. There is nothing in the record to reflect that plaintiff exercised diligence in attempting to depose defendants in a more timely manner; although plaintiff asserts defense counsel continually cancelled depositions, there is nothing to show plaintiff exercised "diligence," such as using subpoenas under Rule 4:14-7, or even letters to defense counsel attempting to schedule and reschedule depositions.

Therefore, the trial court did not abuse its discretion in denying plaintiff's motion to reopen and extend discovery after arbitration had taken place, the trial

14

date was set, and with no showing by plaintiff's counsel of diligence or events clearly outside of their control that constituted exceptional circumstances.

## III.

We also reject plaintiff's argument the judge erred granting summary judgment to Leaguers. We review a grant of summary judgment de novo, "applying the same standard as the trial court." F.K. v. Integrity House, Inc., 460 N.J. Super. 105, 114 (App. Div. 2019). Under Rule 4:46-2(c), summary judgment should be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." We review the trial court's determination of the applicability of charitable immunity de novo, because an organization's right to immunity is a question of law. F.K., 460 N.J. Super. at 114 (quoting Green v. Monmouth Univ., 237 N.J. 516, 529 (App. Div. 2019)).

Under the Charitable Immunity Act,

> [n]o nonprofit corporation, society or association organized exclusively for religious, charitable, or educational purposes or its trustees, directors, officers, employees, agents, servants or volunteers shall . . . be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or

servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association . . . .

[N.J.S.A. 2A:53A-7(a) (emphasis added.).]

Charitable immunity is an affirmative defense, and as such, defendants bear the burden of showing they are entitled to its protection. F.K., 460 N.J. Super. at 116. A defendant seeking charitable immunity must show that it "(1) was formed for nonprofit purposes; (2) is organized exclusively for religious, charitable or educational purposes; and (3) was promoting such objectives and purposes at the time of the injury to plaintiff who was then a beneficiary of the charitable works." Ibid. (quoting Tonelli v. Bd. of Educ. of Wyckoff, 185 N.J. 438, 444-45 (2005)). Whether a nonprofit entity "actually conducts its affairs consistent with its stated purpose often requires a fact-sensitive inquiry." Ibid. (quoting Kuchera v. Jersey Shore Family Health Ctr., 221 N.J. 239, 252 (2015)). An entity must be examined "to discover its aims, its origins, and its method of operation in order to determine whether its dominant motive is charity or some other form of enterprise." Ibid. (quoting Parker v. St. Stephen's Urban Dev. Corp., Inc., 243 N.J. Super. 317, 325 (App. Div. 1990)).

Further financial analysis is required for entities purporting to be organized exclusively for "charitable" purposes, but because the terms

16

A-0707-18T4

"educational" and "religious" are limited and commonly understood descriptions, "[e]ntities that can prove they are organized exclusively for educational or religious purposes automatically satisfy the second prong of the charitable immunity standard," and no financial analysis is necessary. Id. at 116-17 (citations omitted).

As to the third prong, where the injured party is a direct recipient of the charity's good works "or accompanies a beneficiary to the event," the defense is available. Kain v. Gloucester City, 436 N.J. Super. 466, 480-81 (App. Div. 2014) (quoting Roberts v. Timber Birch-Broadmoore Athletic Ass'n, 371 N.J. Super. 189, 195-96 (App. Div. 2004)). Where a parent is on the premises of a non-profit educational or religious organization for the sole purpose of picking her child up from school, she is a "beneficiary, to whatever degree" of its works at the time. Gray v. St. Cecilia's Sch., 217 N.J. Super. 492, 493-94 (App. Div. 1987).

Plaintiff concedes, and it is not in dispute, that Leaguers is a 501(c)(3) organization formed for the purposes of providing education to the community, and that plaintiff was on the premises to pick up her child from school. Plaintiff argues Leaguers' rental of rooms for events renders it "akin to a hotel or banquet

hall," not "exclusively" organized for educational purposes, and that they therefore do not qualify for immunity under the statute. We reject this argument.

"Activities designed to raise monies in support of a charitable organization's core purposes generally contribute to those purposes and do not change the 'essence of the entity itself.'" Bieker v. Cmty. House of Moorestown, 169 N.J. 167, 170-71 (2001) (quoting Snyder v. Am. Ass'n of Blood Banks, 144 N.J. 269, 305 (1996)). An entity will only lose its immunity under the statute where its non-charitable activities become the "dominant motive" of the organization so that it becomes "some other form of enterprise." Ibid. (quoting Parker, 243 N.J. Super. at 325).

In Bieker, the New Jersey Supreme Court noted, as to a charitable organization earning income from "some limited noncharitable activity," such as renting facilities to for-profit entities, that "[g]enerally those activities are an adjunct to the organization's core purpose if only because they provide a source of income, in addition to charitable donations and trust funds, that enables the organization to carry out that purpose." Id. at 178-79.

The Court clarified in Ryan v. Holy Trinity Evangelical Lutheran Church, 175 N.J. 333 (2003), that entities that can prove they are organized exclusively for educational or religious purposes automatically satisfy the second prong of

the charitable immunity shelter, and there is no need to engage in further factual analysis to determine whether their dominant motive is charitable, as in <u>Bieker</u>. <u>Ryan</u>, 175 N.J. at 345-46.

Although plaintiff argues that a jury must decide whether the non-educational activity of "running a space-leasing business" has become Leaguers' dominant motive, thereby stripping them of their immunity, Leaguers only needs to show that they are organized exclusively for educational purposes to satisfy the second prong, under <u>Ryan</u>.

Here, Leaguers' website reflects they have sixteen locations for Head Start preschool and Early Headstart programs, offer a plethora of training classes, and, in addition to these services, offer three rooms at their headquarters building as rental spaces for "[d]ances [and] [p]arties, [r]eunions, [s]howers, [b]irthdays, [w]eddings, [t]raining, [b]anquets, [s]eminars, [l]uncheons, [r]eceptions, [c]onferences, [a]nniversaries, [b]usiness [m]eetings, [and] [c]hurch [s]ervices." Leaguers' website makes clear the focus of the organization is exclusively educational, and no reasonable person would think that defendants' primary function is running a space-leasing business.

Based on our review of the record, the trial court did not err in granting Leaguers summary judgment based on their immunity under N.J.S.A. 2A:53A-7 to -11.

IV.

Nor did the court err denying reconsideration. Reconsideration "is 'a matter within the sound discretion of the [c]ourt, to be exercised in the interest of justice'" and "is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion." Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). Rather, it should be used

> only for those cases which fall into that narrow corridor in which either (1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [Ibid. (quoting D'Atria, 242 N.J. Super. at 401).]

Defendant argues the trial court overlooked commercial aspects of defendants' business; that the telephonic audibility issues at the hearing were new evidence; and the trial court should have vacated summary judgment on those grounds. Based on our review of the record we conclude these arguments

20

are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION